UNITED STATES FIDELITY AND GUARANTY
COMPANY, Appellant and Cross-Appellee,

v.

ST. ELIZABETH MEDICAL CENTER, Appellee and Cross-Appellant, et al.

[Cite as *United States Fid. & Guar. Co. v. St. Elizabeth
Med. Ctr.* (1998), 129 Ohio App.3d 45.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16518.

Decided July 10, 1998.

46

**48**

*Thomas J. Keener,* for United States Fidelity and Guaranty Company.

*Stephen K. Shaw,* for St. Elizabeth Medical Center.

*Marylee Gill Sambol* and *Harvey Wachsman,* for the "Burt plaintiffs."

FAIN, Judge.

Plaintiff-appellant United States Fidelity and Guaranty Company ("USF&G") appeals from a judgment of the Montgomery County Court of Common Pleas, declaring that USF&G is obligated under the terms of eleven general liability insurance policies it issued to St. Elizabeth Medical Center ("SEMC" or "the hospital") to defend or indemnify SEMC for negligent credentialing claims brought against the hospital by seventeen former patients of Dr. James C. Burt. USF&G argues that the trial court erred in ruling that coverage exists because, among other reasons, the claims brought against SEMC are barred from coverage under the policies' express exclusion for malpractice and professional services.

Defendant-appellee, SEMC, cross-appeals from the portion of the trial court's judgment declaring that the negligent credentialing claims are also covered under the terms of a trust fund created by SEMC to cover its professional liability risks, so that SEMC is required to share in the costs of defending, settling, or

paying for the negligent credentialing claims. SEMC argues that claims for negligent credentialing fall outside the coverage provisions of the trust fund. SEMC also asserts that the trial court abused its discretion by not awarding it attorney fees for defending against USF&G's declaratory judgment action.

As to USF&G's appeal, we hold that the claims brought against SEMC are barred from coverage under the policies' exclusion for malpractice and professional services; thus, the trial court erred in ruling that coverage exists under the policies. As to SEMC's cross-appeal, we hold that the trial court did not err in ruling that the trust fund provided coverage for the negligent credentialing claims and did not abuse its discretion in refusing to award attorney fees to SEMC. Accordingly, the judgment of the trial court is affirmed in part and reversed in part.

## I

Dr. Burt performed a surgical procedure known as the "Surgery of Love" on a number of women during the 1970s and 1980s; the surgery was designed to improve a woman's sexual relations and responsiveness. Dr. Burt performed these operations at SEMC, where he was on staff. A number of women who underwent this procedure allegedly experienced adverse side effects, leading to physical and emotional illnesses. Approximately forty-five of the women brought suit against Dr. Burt and SEMC, seeking recovery for their alleged injuries. The complaints charged that the hospital had "negligently credentialed" Dr. Burt by continuing his staff membership and hospital privileges.

SEMC maintained both professional liability and general liability insurance with various insurance carriers until October 1, 1977. On that date, SEMC discontinued its professional liability insurance because of its escalating cost. On November 9, 1977, SEMC established a "self-insurance trust fund" to cover the hospital's professional liability risks. SEMC maintained an annual general liability policy with USF&G from October 1, 1977 to October 1, 1988.

Upon being served with the forty-five lawsuits from the former patients of Dr. Burt, SEMC referred all of the complaints where treatment had been rendered prior to October 1, 1977, to its insurance agent, who, in turn, sent notices to the various insurance carriers responsible for providing coverage. Seventeen of the lawsuits arose from treatment that had been rendered after October 1, 1977. SEMC considered these lawsuits to be covered under the terms of its self-insurance trust fund; therefore, the hospital used the trust fund to defend, settle, or pay for those lawsuits.

On June 30, 1993, the Ohio Supreme Court issued its decision in *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993, which held that negligent

credentialing claims are not "medical claims" within the meaning of R.C. 2305.11(D)(3), and, therefore, those claims are governed by the two-year limitation period for general negligence claims, rather than the one-year limitation period for medical claims. Upon reviewing *Browning v. Burt,* SEMC re-evaluated the coverage provisions of both its self-insurance trust fund and its general liability policies with USF&G and other insurance carriers. SEMC concluded that its self-insurance trust fund did not provide coverage for the negligent credentialing claims but that its general liability policies with USF&G and other insurance carriers did. SEMC provided USF&G and its other general liability carriers with notice of the lawsuits.

In response, USF&G filed a declaratory judgment action, naming as defendants SEMC and the seventeen former patients of Dr. Burt who had received treatment after October 1, 1977. In its complaint, USF&G asked the trial court to declare that the eleven general liability policies issued by it to SEMC between 1977–1988 provided no insurance coverage for the claims brought against SEMC. Subsequently, USF&G sought an additional declaration from the trial court that the self-insurance trust fund did provide "coverage" for the negligent credentialing claims.

By agreement of the parties, the case was presented to the trial court in stages. In the first stage, the trial court determined that the general liability policies issued by USF&G to SEMC covered claims for negligent credentialing. In the second stage, the trial court, after a hearing on cross-motions for summary judgment on the issue, ruled that the self-insurance trust fund provided coverage for the negligent credentialing claims. The parties stipulated they would share equally in the costs of defending and paying for the claims until the coverage limits under the policies had been exhausted, assuming that the trial court's decision was upheld on appeal. In the final stage, the trial court issued rulings concerning the precise dates on which USF&G's duty to defend arose as to each of the seventeen lawsuits. USF&G and SEMC now appeal and cross-appeal, respectively, from the trial court's judgment.

## II

In its sole assignment of error, USF&G argues:

"The trial court erred when it ruled that the general liability insurance policies issued by USF&G to St. Elizabeth Medical Center during the time frame October 1, 1977 to October 1, 1988 provided liability insurance coverage for the negligent credentialing claims presented by seventeen patients of Dr. James Burt against St. Elizabeth Medical Center for surgical procedures that they underwent at St. Elizabeth Medical Center during that time frame."

USF&G presents five arguments in support of its single assignment of error; however, we need discuss only the third argument, since it is dispositive of USF&G's appeal. USF&G contends that the trial court erred by not ruling that coverage was barred under the policies' exclusion for malpractice and professional services, which states:

"It is agreed that with respect to any operation described below or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury or property damage due to

"1. the rendering of or failure to render

"(a) medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

"(b) any service or treatment conducive to health or of a professional nature; or

"(c) any cosmetic or tonsorial service or treatment.

"2. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

"3. the handling of or performing of autopsies on dead bodies."

USF&G argues that coverage is barred under paragraph 1(a) of the above exclusion, since the bodily injuries allegedly sustained by the former patients of Dr. Burt were due to the rendering of or failure to render medical or surgical service or treatment by Dr. Burt, himself. SEMC counters this argument by contending, essentially, that the focus should be placed on whether the negligent credentialing claims made against the hospital are barred from coverage under the exclusion in question; SEMC urges that we answer that question in the negative.

The bodily injuries allegedly sustained by the former patients of Dr. Burt could have resulted from two causes: the surgical procedures of Dr. Burt and/or SEMC's alleged negligent credentialing of Dr. Burt. As one commentator has observed:

"The nature of many liability insurance losses is such that it is almost always possible to theoretically separate the activity which was occurring at the time of the loss (driving, loading, treating patients, and so forth), from some related but antecedent or concurrent activity that arguably contributed to the loss (hiring, supervision, training, packing, and so forth)." 7 Couch on Insurance (3 Ed.1997) 101–157, Section 101:60.

It is often the case that "the activity which was occurring at the time of the loss" (*e.g.,* treating patients) is excluded from coverage under the insurance

policy in question, while the "related but antecedent or concurrent activity that arguably contributed to the loss" (*e.g.*, hiring, supervision, etc.) is not excluded. In such cases, courts will allow recovery under the policy where the preliminary or concurrent act of planning, supervising, etc. is "independent" of the excluded cause. *Id.* See, *e.g.*, *Ohio Cas. Ins. Co. v. Hartford Acc. & Indem. Co.* (1983), 148 Cal.App.3d 641, 648, 196 Cal.Rptr. 164, 169. Conversely, courts will disallow recovery where the preliminary or concurrent act contributing to the loss is not independent of the excluded cause. See, *e.g.*, *Smith v. State Farm & Cas. Co.* (1995), 192 Wis.2d 322, 531 N.W.2d 376, 380; *Burlington v. Mexican Am. Unity Council* (Tex.App. 1995), 905 S.W.2d 359, 362–363; *McPherson v. Michigan Mut. Ins. Co.* (1993), 310 S.C. 316, 426 S.E.2d 770, 771–772. The preliminary or concurrent act contributing to the loss is independent of the excluded cause only where the act (1) can provide the basis for a cause of action in and of itself *and* (2) does not require the occurrence of the excluded risk to make it actionable. *Smith, supra.*

In light of the foregoing, we hold that when a loss for which an insured seeks coverage results from two or more causes, at least one of which is covered under the insurance policy and at least one of which is excluded, coverage will extend to the loss, provided that the cause of loss covered under the policy is independent of the excluded cause of loss. The covered cause of loss is independent of the excluded cause of loss only when the covered cause of loss (1) provides a basis for a cause of action in and of itself *and* (2) does not require the occurrence of the excluded risk to make it actionable.

Applying the foregoing to the case before us, we begin by noting that any injuries stemming from the surgical procedures performed by Dr. Burt are expressly excluded from coverage under paragraph 1(a) of the exclusionary clause in question. For purposes of this argument, we shall assume without deciding that losses caused by negligent credentialing are not excluded *per se* from coverage. Therefore, the question becomes whether SEMC's alleged negligent credentialing of Dr. Burt is "independent" of the surgical procedures performed by Dr. Burt, for purposes of determining whether negligent credentialing constitutes a cause of loss independent from the excluded cause, *i.e.*, the rendering of medical or surgical services or treatment.

While it is clear that a claim of negligent credentialing provides a basis for a cause of action in and of itself, see *Browning v. Burt, supra*, 66 Ohio St.3d at 555–557, 613 N.E.2d at 1002–1004, it is equally clear that no plaintiff can maintain a cause of action for negligent credentialing without demonstrating that his or her injuries were caused by some physician on the hospital's staff who rendered or failed to render medical services to the plaintiff. Thus, losses caused by negligent credentialing are not independent of losses caused by the rendering or

failure to render medical or surgical service or treatment. As a result, the claims brought against SEMC are excluded from the policies' coverage.

SEMC calls our attention to the fact that the Ohio Supreme Court has stated that negligent credentialing claims are "independent" of medical malpractice claims and "the physician's ultimate act of medical malpractice is factually and legally severable and distinct from the hospital's acts or omissions in negligently credentialing him or her[.]" *Browning v. Burt, supra,* 66 Ohio St.3d at 556–557, 613 N.E.2d at 1004. However, this language relates to the court's holding that negligent credentialing claims are not "medical claims" within the meaning of R.C. 2305.11(D)(3) and therefore are subject to the two-year period of limitation governing general negligence claims rather than the one-year period of limitation governing medical claims. Here, the question is not simply whether negligent credentialing constitutes an independent *cause of action,* but also whether negligent credentialing constitutes an independent *cause of loss.*

■ SEMC also contends that cases like *Burlington, supra,* are distinguishable, since, in those cases, the express language of the exclusion precluded recovery where the injuries "arise out of" specified conduct, whereas here, the exclusion precludes coverage where the injuries are "due to" the rendering of medical or surgical services or treatment. Essentially, SEMC contends the "due to" language is not broad enough to exclude coverage for the negligent credentialing claims. We disagree.

"Due to" is synonymous with "caused by." Black's Law Dictionary (6 Ed.1990) 501. In *McPherson, supra,* the court was faced with an exclusion that barred coverage for injuries "arising out of the ownership, operation, or use of an automobile." *Id.,* 310 S.C. at 318, 426 S.E.2d at 771. Despite narrowly construing the phrase "arising out of" to mean "caused by," the court nevertheless concluded that a city's negligence in failing to adequately train or supervise its police officers in the proper use of patrol cars was not independent of the police officer's negligent use of the car. *Id.,* 310 S.C. at 320, 426 S.E.2d at 771–772.

■ SEMC also contends that Dr. Burt was an "independent contractor," and there is no language in the exclusion indicating that it applies to "independent acts of third parties." However, the plain language of the exclusion requires only that the injury be caused by the rendering or failure to render medical or surgical treatment or services. It is not relevant that the physician who renders those services or treatment is a "third-party contractor." Furthermore, there is nothing in our previous decision in *Michigan Millers Ins. Co. v. Anspach* (1996), 109 Ohio App.3d 618, 672 N.E.2d 1042, that aids SEMC's position. In that case, we held that under the express language of the insurance policy's intentional acts exclusion, coverage was precluded only for injury that was expected or intended

by the *insured* and not by some third party who was with the insured. As noted above, there is nothing in the express language of the exclusion at issue here that prevents its application to this case.

In light of the foregoing, USF&G's assignment of error is sustained.

## III

SEMC raises two assignments of error on cross-appeal, both of which are formulated as propositions of law. In its first assignment of error, SEMC argues:

"Where the self-insured trust provides coverage for 'liability imposed upon an insured * * * on account of personal injuries * * * arising out of occurrences of actual or alleged professional medical malpractice on the part of the insured * * *,' claims of various plaintiffs which allege liability for negligence in credentialing a physician and for permitting the physician to perform experimental procedures at the insured hospital are not covered by the self-insured trust." (Ellipses *sic*.)

Essentially, SEMC argues that the trial court erred in holding that the self-insurance trust fund provided coverage for the negligent credentialing claims being asserted against the hospital. SEMC contends the trust fund provides coverage only for losses arising out of acts of "professional medical malpractice" and not for "non-treatment based claims," like the ones for negligent credentialing being brought against the hospital by the former patients of Dr. Burt. Thus, SEMC argues, the trial court erred in granting USF&G's motion for summary judgment and denying SEMC's motion for summary judgment on this issue.

Summary judgment is to be granted when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party, who is entitled to have the evidence viewed most strongly in his or her favor. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 273–274.

The self-insurance trust fund was established by a "Trust Agreement" entered into by SEMC and Third National Bank and Trust Company for the purpose of providing "a self-insurance reserve fund" for the benefit of SEMC. The trust fund was to be used for the payment of "losses," which is defined in the trust agreement as "all sums which an Insured is obligated to pay by reason of the liability imposed upon an Insured by law or assumed by an Insured under an authorized settlement agreement, for damages, direct or consequential, and expenses (including costs of investigation and defense of legal action), on account of personal injuries (including death at any time resulting therefrom) and

property damage arising out of occurrences of actual or alleged professional medical malpractice on the part of an Insured on or after October 1, 1977[.]"

The phrase "occurrences of professional medical malpractice" is defined as the "negligent rendering of medical services or the negligent failure to render such services." The term "insured" is defined as "the Center [SEMC] and all persons, from time to time employed by the Center, while acting within the scope of his employment and on behalf of the Center (including every physician, Ph.D., osteopath, podiatrist, dentist, intern, resident, nurse, student nurse, member of the Active Attending Staff, acting in such employment capacity), and any volunteer or auxiliary while performing services on behalf of the Center[.]"

In its decision granting USF&G summary judgment, the trial court noted that negligent credentialing is not specified as a covered activity under the trust agreement. However, the trial court found an "ambiguity" in the trust agreement's definition of "losses" in light of evidence presented by USF&G showing that SEMC's Board of Trustees established the trust fund to replace its previous commercial policies covering the hospital's professional liability risks, which included coverage for negligent credentialing. Additionally, the trial court noted that SEMC used the trust fund initially to defend the claims brought against the hospital by the former patients of Dr. Burt. Upon consideration of these facts, the trial court concluded that SEMC "intended" the trust agreement to provide coverage for the negligent credentialing claims.

We differ with the reasoning of the trial court in several key respects. The agreement creating the self-insurance trust fund is a contract that must be interpreted with reference to the same basic principles governing any other contract. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties * * * [which] is presumed to reside in the language they chose to employ in the agreement." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526. Where the written instrument is unambiguous, a court must give effect to the parties' expressed intentions; unexpressed intentions are deemed to have no existence. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922–923.

Contractual language is "ambiguous" only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations. *Potti v. Duramed Pharmaceuticals, Inc.* (C.A.6, 1991), 938 F.2d 641, 647. If an ambiguity exists in a contract, then it is proper for a court to consider "extrinsic evidence," *i.e.,* evidence outside the four corners of the contract, in determining the parties'

intent. *Blosser v. Carter* (1990), 67 Ohio App.3d 215, 219, 586 N.E.2d 253, 255–256. Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement. *Id.* However, courts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, *i.e.*, apparent on the face of the contract. *Schachner v. Blue Cross & Blue Shield of Ohio* (C.A.6, 1996), 77 F.3d 889, 893.

Here, the trial court impermissibly created an ambiguity in the definition of "losses" through the use of extrinsic evidence. Specifically, the trial court found an ambiguity in the definition of "losses" based upon extrinsic evidence presented by USF&G showing that (1) SEMC's Board of Trustees intended to use the trust fund to replace SEMC's commercial policies covering professional liability risks and (2) SEMC's previous commercial policies covered claims for negligent credentialing. The trial court proceeded to use this "ambiguity" as justification for considering an additional piece of extrinsic evidence, to wit, the evidence that SEMC used the trust fund initially to defend the claims brought against the hospital by the former patients of Dr. Burt. After considering all of the extrinsic evidence listed above, the trial court concluded that SEMC intended for the trust fund to cover claims for negligent credentialing. However, the trial court was not permitted to consider any of this extrinsic evidence unless there was an ambiguity apparent on the face of the trust agreement. The trust agreement essentially defines "losses," in relevant part, as all sums that SEMC becomes liable to pay for damages on account of personal injuries arising out of occurrences of actual or alleged professional medical malpractice. This provision is not ambiguous, and, therefore, there was no occasion for the trial court to resort to extrinsic evidence to determine the parties' intent.

USF&G nonetheless contends that the claims being brought against SEMC are covered under the definition of "losses," since the credentialing process is a "medical service," and, therefore, instances of negligent credentialing can constitute "occurrences of actual or alleged professional medical malpractice." We disagree.

The term "medical services" is not defined in the trust agreement; thus, it must be given its natural and usual meaning. *Watkins v. Brown* (1994), 97 Ohio App.3d 160, 164, 646 N.E.2d 485, 487. "Services" are commonly understood to mean "[t]hings purchased by consumers that do not have physical characteristics (e.g., services of doctors, lawyers, dentists, repair personnel)." Black's Law Dictionary (6 Ed.1990) 1369. "Medical" is commonly defined as "[p]ertaining, relating or belonging to the study and practice of medicine, or the science and art of the investigation, prevention, cure, and alleviation of disease."

*Id.* at 982. Therefore, under its natural and usual meaning, "medical services" would include things such as an examination, diagnosis, treatment, or advice given by a physician to a patient. A hospital's credentialing process, on the other hand, does not fall within the natural and usual meaning of "medical services."

Nevertheless, the trial court's grant of summary judgment to USF&G was proper because the definition of "losses" is broad enough to cover any liability imposed on SEMC by virtue of the claims brought against it by the former patients of Dr. Burt. In any negligent credentialing case, the plaintiff's injuries necessarily will arise out of an actual or alleged negligent rendering or failure to render medical services, *i.e.*, professional medical malpractice. Thus, any liability imposed on SEMC as a result of the negligent credentialing claims necessarily will be "for damages * * * on account of personal injuries * * * arising out of occurrences of actual or alleged professional medical malpractice." Therefore, the trial court was correct in finding that the trust fund provided coverage for the negligent credentialing claims brought against SEMC, and we affirm the trial court's grant of summary judgment to USF&G, though we do so on different grounds. See *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150, 154 (a reviewing court is not authorized to reverse a correct judgment simply because erroneous reasons have been assigned as a basis thereof).

SEMC's first assignment of error is overruled.

### IV

SEMC's second assignment of error contends:

"Where an insured incurs significant costs and expense in defending a declaratory judgment action brought by the insurer upon its wrongful denial of coverage, the insurer must pay the costs of the declaratory judgment action when payment of said costs is the only means of making the insured whole after a successful defense of the action brought against the insured by the insurer."

In this assignment of error, SEMC faults the trial court for not awarding it reasonable attorney fees for its defense of the declaratory judgment action brought by USF&G.

A trial court has authority pursuant to R.C. 2721.09 to award attorney fees based on its issuance of a declaratory judgment, so long as the award is "necessary" and "proper." *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157; 160, 648 N.E.2d 488, 490–491, syllabus. A trial court may award attorney fees, even where the insurer has not acted in bad faith and even to a party that does not prevail in the underlying action. *Id.* at 160, 648 N.E.2d at 490–491. However, the trial court's decision to grant or deny relief

cannot be overturned on appeal absent an abuse of discretion. *Id.* at syllabus. The term "abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343, 345.

Here, for the reasons we have set forth, we conclude that SEMC should not have prevailed on any of its claims. While it is permissible under *Brandenburg* to award attorney fees to a party that has not prevailed in a declaratory judgment action, it would take an unusual circumstance for such an award to be appropriate. This is not such an occasion.

SEMC's second assignment of error is overruled.

### V

USF&G's assignment of error having been sustained and SEMC's assignments of error on cross-appeal having been overruled, we affirm in part and reverse in part the judgment of the trial court. This cause is remanded for further proceedings.

*Judgment accordingly.*

FREDERICK N. YOUNG, P.J., and BROGAN, J., concur.