[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY
Appellants Tom and Claudia McKee claim that appellee Linnea Mays agreed to purchase their house. Mays argues that she merely leased the house and purchased an option to buy it. Both parties moved for summary judgment in the trial court. At issue was the interpretation of two documents, one identified as a lease and the other entitled a contract to purchase. Based on the language contained in the documents, the trial court denied the McKees' motion and granted summary judgment in favor of Mays on the McKees' claims of breach of contract and fraud.
The McKees and Mays entered a lease agreement for the McKees' house for a term beginning in November of 1997 and ending July 31, 1998. The lease was a form contract that contained numerous provisions, many of which contained initialed handwritten changes in the form's language, including deletions and additions of terms. Of special import was the lease's "Option to Purchase the Premises" provision. This section read,
Lessee shall have the option to purchase the premises on the terms and conditions set forth in the Contract to Purchase attached hereto and incorporated herein by reference as Exhibit "A." Lessee shall provide Lessor written notice at least thirty (30) days in advance of Lessee's intention to exercise the option to Purchase. Lessee shall immediately upon delivering notice to Lessor of her intention to exercise the option to purchase, begin completion of due diligence required in the contract to purchase. Lessee shall be required to pay rent through and including the day of closing on the purchase of the property in the event the Lessee exercises the option to purchase.
Following that language was this handwritten clause:
 Re: option to purchase the premises In the event the Lessee extends the term of this lease as permitted under Paragraph 1 hereof, Lessee may also extend the term of this option for a like period of three months, upon the payment of $1,000 to Lessor. This option extension shall not be applicable to the purchase price.
The purchase contract was also a form contract. The parties provided handwritten additions and deletions. The purchase contract contained the purchase price of the house, the amount of earnest money, the address, contingencies, the possession date of the house for rental purposes only, and a closing date of January 31, 1998. After that date, all monies received were to be treated as rent payments and not as earnest money deductible from the purchase price. The contract also contained two alternate provisions concerning the condition of the house. In one provision, the sellers certified that the house would be in the same condition as it was on the date of the offer. The alternate provision made no representations or warranties concerning the condition of the property. The parties had not chosen which of these alternates was applicable. The lease and the purchase contract were signed the same day.
Our review of a decision granting summary judgment isde novo and requires us to determine that (1) no genuine issue of material fact remains to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) and reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-movant, and that conclusion is adverse to the non-movant.[1] The trial court determined as a matter of law that the contract was unambiguous, and that the parties' intent was obvious from the language they used in the lease. We come to the same conclusion.
Ohio courts have long held that "construction of written contracts and instruments of conveyance is a matter of law."[2] Courts examine a contract "to ascertain and give effect to the intent of the parties" as contained in the contract's language.[3] If a contract is not ambiguous, "a court must give effect to the parties' expressed intentions; unexpressed intentions are deemed to have no existence."[4]
A contract is not ambiguous where its meaning can be determined from the four corners of the agreement, or where the language is susceptible to only one reasonable interpretation.[5]
Any ambiguity must be apparent on the face of the contract, and one may not create ambiguity by extrinsic evidence.[6]
"Common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument."[7] And where writings are "executed as part of the same transaction," they must be read as a whole and the intent of each part determined from "a consideration of the whole."[8]
The option-to-purchase provision of the lease clearly refers to the purchase contract as an exhibit to the lease and identifies it as a description of the terms and conditions of sale if Mays exercised her option. The fact that the purchase contract does not contain an exhibit letter is insufficient to create an ambiguity as to its purpose in light of the plain language of the lease. Thus, we conclude that the purchase contract can be interpreted only with respect to the basic intent and effect of the lease, and that it is a part of that document and not a separate obligation to purchase the property. To hold otherwise would render meaningless the provisions of the lease, especially the handwritten provisions calling for a thirty-day written notice to exercise the option, written notice to extend the option, and for an additional payment to extend the option. Thus, we conclude that the purchase contract was merely a part of the lease, and that it contained the requirements that would arise if Mays decided to exercise her option.
There is no evidence that Mays exercised the option after signing the purchase contract. To exercise the option, Mays had to provide the McKees thirty day's written notice. Mays claims that she never did so. According to Tom McKee's deposition testimony, the McKees never received a written thirty-day notice that Mays intended to exercise the option to purchase.
The McKees claim that they waived the notice requirement because Mays purchased the house when she signed the purchase agreement. But, as we concluded above, the purchase agreement did not constitute a separate obligation to buy the McKees' house, so this argument is moot.
The McKees alternatively argue on appeal that a letter they received from Mays's mortgage company constituted a thirty-day notice. The letter stated that Mays had applied for financing and that the company did not "anticipate any problem with the loan closing within 30 days." This specific argument was not raised below. Even had it been, the McKees would not have prevailed. Mays testified that she did not approve the mortgage company's letter, nor did she direct the company as to what to put in the letter. She testified that the letter was to indicate only that she had applied for financing in order to address the McKees' concern about their bridge loan. Claudia McKee had no knowledge of what discussions Mays had with her mortgage company, but she did acknowledge that she had requested a letter to ease the McKees' situation with their bridge loan. We believe the mortgage company's unauthorized statements were insufficent to constitute a written notice of Mays's intent to exercise the option to purchase the McKees's house.
Because Mays did not exercise the option, she had no obligation to purchase the house. The fact that she sought to determine whether she would qualify for financing, had the house inspected, paid $500, and stated that she loved the house did not cause a justifiable belief on the part of the McKees that she had exercised the option, in light of the failure to provide the necessary written notice.
Accordingly, the judgment of the trial court is affirmed.
 ______________________________ HILDEBRANDT, PRESIDING JUDGE
 PAINTER and WINKLER, JJ.
[1] See Civ.R. 56.
[2] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, 148, paragraph one of the syllabus.
[3] Foster Wheeler Enviresponse, Inc. v. Franklin Co. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519,526.
[4] United States Fid. Guar. Co. v. St. Elizabeth Med. Ctr.
(1998), 129 Ohio App.3d 45, 55, 716 N.E.2d 1201, 1208.
[5] See id. at 56, 716 N.E.2d at 1208.
[6] See id.
[7] Alexander v. Buckeye Pipe Line Co., at 241, 374 N.E.2d at 150, paragraph two of the syllabus.
[8] Foster Wheeler Enviresponse, Inc. v. Franklin Co. ConventionFacilities Auth. at 361, 678 N.E.2d at 526.