OPINION
{¶ 1} On August 29, 1996, William Smith, owner of appellee, Crickets of Ohio, Inc., and Robert Grilli, then owner of Grilli Real Estate Corporation, entered into a lease agreement whereby Mr. Smith would lease premises from Mr. Grilli to operate his restaurant named "Billy Crickets." In November of 2002, appellant, Hines Investments LLC, purchased property from Mr. Grilli. The property contained multiple buildings including the building leased to appellee, a building occupied by Goodwill and a building used as an automated banking facility.
 {¶ 2} On February 12, 2004, appellee filed a complaint against appellant alleging breach of contract, claiming appellant failed to reimburse appellee for work appellee performed on the property that was appellant's responsibility under the lease agreement. Appellee also sought a declaratory judgment and injunctive relief to stop appellant from developing the parking lot and property leased to appellee. An amended complaint adding additional breach claims was filed on October 28, 2004. Appellant filed a counterclaim alleging its own breach of contract claims, and also seeking a declaratory judgment to develop the common and adjacent areas of the subject premises.
 {¶ 3} The parties settled various breach of contract claims and submitted the issue of what constituted the "leased premises" to the trial court. By judgment entry filed July 13, 2005, the trial court found in pertinent part that appellee was entitled to an additional gravel parking lot, the "upper parking lot." The trial court also enjoined appellant from constructing anything in the parking lot areas which would interfere with appellee's leasehold.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY INTERPRETING THE WRITTEN LEASE TO REQUIRE DEFENDANT TO GIVE PLAINTIFF A THIRD PARKING AREA, WITHOUT CONSIDERATION, AS PART OF PLAINTIFF'S LEASED PREMISES WHERE ONLY TWO PARKING AREAS ARE SPECIFICALLY DEFINED AS `THE LEASED PREMISES'"
 II {¶ 6} "TO THE EXTENT THE TRIAL COURT RELIED ON TESTIMONY FROM CRICKETS' PRINCIPAL, MR. SMITH, REGARDING STATEMENTS BY OR CONDUCT OF DEFENDANT'S PREDECESSOR, MR. GRILLI, TO REACH THE CONCLUSION THAT MR. GRILLI GRAVELED AN AREA FOR USE BY PLAINTIFF AS A THIRD PARKING AREA, THE TRIAL COURT ERRED AS A MATTER OF LAW IN ADMITTING HEARSAY AND UNRELIABLE EVIDENCE."
 III {¶ 7} "THE TRIAL COURT'S DETERMINATION THAT DEFENDANT'S PREDECESSOR, MR. ROBERT GRILLI, GRAVELED AN AREA FOR USE BY PLAINTIFF AS A THIRD PARKING AREA IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I, III {¶ 8} Appellant claims the trial court erred in finding the plain and ordinary meaning of the subject lease provided for an "upper parking lot" as part of the leased premises, and claims the trial court's interpretation of a graveled area was against the manifest weight of the evidence. We agree.
 {¶ 9} It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." Skivolocki v. East Ohio Gas Company
(1974), 38 Ohio St.2d 244, paragraph one of the syllabus. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. Alexander v. Buckeye Pipe Line Company (1978),53 Ohio St.2d 241. If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. State ex rel.Parsons v. Fleming (1994), 68 Ohio St.3d 509. Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. Children's Medical Center v. Ward (1993),87 Ohio App.3d 504.
 {¶ 10} A contract is ambiguous if its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation.United States Fidelity Guaranty Company v. St. ElizabethMedical Center (1998), 129 Ohio App.3d 45. If the terms of the contract are determined to be ambiguous, the meaning of the words becomes a question of fact, and a trial court's interpretation will not be overturned on appeal absent a showing of an abuse of discretion. Ohio Historical Society v. General Maintenance Engineering Company (1989), 65 Ohio App.3d 139. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983) 5 Ohio St.3d 217. It is well established where there is ambiguity in a contract, it must be strictly construed against the party who prepared it.
 {¶ 11} The applicable lease provisions are as follows in pertinent part:
 {¶ 12} "1.01 Description
 {¶ 13} "LESSOR hereby leases to LESSEE, and LESSEE hereby leases from LESSOR, that certain property, hereinafter called `the leased premises', situated in Lancaster, Fairfield County, Ohio, and being more particularly described as follows:
 {¶ 14} "The business building occupied by Valerio's restaurant together with the parking lot area north of said restaurant building and the parking lot behind said building, the LESSEE acknowledging that the parking lot to the north of said restaurant business is being used and shall continue to be used by other businesses occupying buildings leased by LESSOR adjoining said parking lot and ingress and egress thereto.
 {¶ 15} "7.01 Lessee's Duties
 {¶ 16} "LESSEE agrees to keep the leased premises in good order and repair, reasonable wear and tear (and damage by accident, fire or other casualty not resulting from LESSEE'S negligence) excepted. * * *
 {¶ 17} "Further, the LESSEE shall maintain and keep clean the entrances and exits, parking areas and lawn being leased to the LESSEE.
 {¶ 18} "* * *
 {¶ 19} "7.02 Lessor's Duties
 {¶ 20} "* * * LESSOR will also repair and maintain the parking lot and agrees to repaint lines for parking spaces on the parking lot prior to LESSEE opening its doors for business. LESSOR further agrees to gravel the area behind the building to provide additional space to LESSEE in the event that LESSEE advises LESSOR in writing that LESSEE needs additional parking space. * * *"
 {¶ 21} In its judgment entry filed July 13, 2005, the trial court read these provisions together and found the "upper parking lot" was part of the leased premises:
 {¶ 22} "This Court finds that since § 1.01 provides for two parking lots, the language contained in § 7.02 contemplates that the Lessor will gravel an additional area to provide additional parking to Lessee. To that end, Defendant's predecessor in the Lease, Robert Grilli, the original Lessor, did, in 2000, gravel the area behind the building [referred to in this litigation as the `upper parking lot']. The Court finds that Defendant's predecessor to this Lease, by graveling an additional area behind the restaurant building, clearly considered the newly graveled area to be part of the premises he leased to Plaintiff.
 {¶ 23} "Thus, the Court finds that the `upper parking lot' is part of the premises leased to Plaintiff. The Court further finds that Defendant's present plans for construction of a new building in that area would infringe on Plaintiff's rights under the Lease and thus, interfere with Plaintiff's right of quiet possession, [discussed infra], pursuant to § 9.01 of the Lease."
 {¶ 24} In making its decision, the trial court relied upon the language in § 7.02, "LESSOR further agrees to gravel the area behind the building to provide additional space to LESSEE in the event that LESSEE advises LESSOR in writing that LESSEE needs additional parking space." We note the "behind the building" area is not described in the definition of premises, and the lease provides for no additional consideration for the "additional parking space."
 {¶ 25} The original lessor, Robert Grilli, testified "behind the building" referred to the area designated as Number 3 in Defendant's Exhibit B1. Grilli depo. at 18-20. Upon request by lessee, Mr. Grilli graveled the area designated as Number 3 in Defendant's Exhibit D, corresponding with Number 3 in Defendant's Exhibit B1. Id. at 34-36. Mr. Grilli never graveled the area designated as Number 7 on the various exhibits, nor did he ever agree to gravel said area as he planned "to build buildings on it." Id. at 28, 36, 41-42, 86. Mr. Grilli never put gravel in the Number 7 area after 2000. Id. at 77.
 {¶ 26} When the lease was drafted, the Goodwill building, designated as Number 9 on Defendant's Exhibit C1, did not exist as Defendant's Exhibit B1 evidences the area was grass. After the Goodwill building was constructed, an area behind the building was graveled for use by the tenants of the building. See, Defendant's Exhibit D.
 {¶ 27} Appellee testified the Number 3 area was only used by his employees until he opened the banquet room in December of 1999. Smith depo. at 55, 62. Since 2000, appellee's employees have been parking behind the Goodwill building. Id. at 67. It is appellee's position his leasehold premises includes all areas save the area of the Goodwill building. Id. at 81-82. This opinion is in complete contradiction of the clear language of §1.01 of the lease cited supra. Somehow appellee bootstrapped the right to request additional parking space to include all ninety-six acres of Mr. Grilli's tract. We find this to be contrary to the clear language of the lease and inconsistent with the fact that the Goodwill building did not even exist at the time of the lease.
 {¶ 28} We conclude § 1.01 of the lease specifically sets forth the premises to be leased. This premise description is not expanded by the repair sections of the lease, § 7.01 and § 7.02, and these sections do not expand the definition of the leasehold premises. We conclude this for the following reasons. The definition of the leasehold premises is clear and there is no ambiguity in § 1.01. As stated supra, the drafter of an instrument bears the burden of having it construed against him/her. Appellee testified his counsel was "Rick Snider" and the lease indicates it was prepared by "Rick L. Snider." Smith depo. at 28-29.
 {¶ 29} Sections 7.01 and 7.02 are distinct and separate from the definition of the leased premises and provide for additional parking. This additional parking area "behind the building" is ambiguous. Mr. Grilli interprets it as being in area Number 3. Appellee interprets it as the entire leasehold. This language is ambiguous and therefore any ambiguity will be resolved against the drafter, appellee herein.
 {¶ 30} Upon review, we find the trial court erred in finding in favor of appellee regarding the "upper parking lot." The injunction pertaining to the upper parking lot is dissolved.
 {¶ 31} Assignment of Error I and III are granted.
 II {¶ 32} Appellant claims the trial court erred in relying on hearsay evidence to reach its decision. Given our determination in Assignments of Error I and III, we find this assignment to be moot.
 {¶ 33} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby reversed.
Farmer, J. Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is reversed.