[Cite as *Kellhofer v. Columbus S. Power*, 2013-Ohio-4226.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| LEE KELLHOFER, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | Case No. 13CA3361 |
| vs. | : | |
| | : | <u>DECISION AND</u> |
| COLUMBUS SOUTHERN | : | <u>JUDGMENT ENTRY</u> |
| POWER, ET AL, | : | |
| | : | |
| Defendants-Appellees. | : | RELEASED 09/25/2013 |

<u>APPEARANCES:</u>

James T. Boulger, Chillicothe, Ohio, for Appellant.

Frank G. Wobst and Jamie A. LaPlante, Porter, Wright, Morris & Arthur LLP, and David A. Laing, Of Counsel, American Electric Power Service Corporation, Columbus, Ohio, for Appellees.

Hoover, J.

{¶ 1}  Plaintiff-appellant, Lee Kellhofer, appeals from the judgment of the Ross County Common Pleas Court that granted the motion for summary judgment of defendant-appellee, Columbus Southern Power ("CSP"), as to Kellhofer's claims for breach of contract and promissory estoppel.  Kellhofer contends that pursuant to the terms of an implied contract, CSP, his former employer, could not terminate him after he tested positive for marijuana on a random drug test and again on his official return-to-work drug test.  Alternatively, Kellhofer contends that the company breached its promise of continued employment.  Because we find that Kellhofer failed to fulfill his obligations under the alleged implied contract or promise of

continued employment by testing positive for marijuana on his return-to-work drug test, we overrule his assignments of error and affirm the judgment of the trial court.

{¶ 2} Kellhofer raises two assignments of error for review.

First Assignment of Error:

THE TRIAL COURT ERRED IN GRANTING THE EMPLOYER'S MOTION FOR SUMMARY JUDGMENT WHEN THE EVIDENCE BEFORE THE COURT ESTABLISHED GENIUNE ISSUES OF MATERIAL FACT, WITH RESPECT TO THE EXISTENCE OF AN IMPLIED CONTRACT AND THE REASONABLE INTERPRETATION OF THE TERMS OF THE CONTRACT.

Second Assignment of Error:

THE TRIAL COURT ERRED IN GRANTING THE EMPLOYER'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF PROMISSORY ESTOPPEL WHEN GENIUNE ISSUES OF MATERIAL FACT EXISTED THAT COULD SUPPORT THE APPLICATION OF THE DOCTRINE AND A FINDING OF BREACH OF THE PROMISE ON THE PART OF THE EMPLOYER.

{¶ 3} Kellhofer is a former employee of CSP, a subsidiary of American Electric Power Company, Inc. (AEP). CSP hired Kellhofer in 1984, and he last worked at CSP as a Station Servicer at the Chillicothe Substation. The position of Station Servicer was within the collective bargaining unit represented by the International Brotherhood of Electrical Workers (IBEW) and was the highest-level bargaining unit position at the Chillicothe Substation. As part of his responsibilities as Station Servicer, Kellhofer inspected high voltage equipment at power stations

and substations; performed maintenance on that equipment; performed emergency power restoration during power outages; and worked on energized equipment and transmission lines. Given the possibility of power-related emergencies, Kellhofer was required to be on-call 24 hours per day.  To facilitate his on-call work, CSP issued Kellhofer a pager and a company vehicle.

{¶ 4}  As a CSP employee, Kellhofer was also subject to AEP's Drug Testing Program. The Drug Testing Program subjects employees in Department of Transportation (DOT) covered positions[1] – including the Station Servicer position – to random drug testing.  Employees are selected for random testing based on a computerized random selection program.  The Drug Testing Program requires that employees testing positive in a random drug test be suspended without pay and referred to the Employee Assistance Program (EAP).  The Drug Testing Program further requires the employee to follow through on any recommendations made by the EAP and to test negative before returning to work.  Notably, the Drug Testing Program states that: "An employee * * * who tests positive a second time will be discharged."

{¶ 5}  On July 14, 2003, the collective bargaining agreement between CSP and Kellhofer's union, IBEW Local 1466, expired.[2]

{¶ 6}  On the morning of July 17, 2003, Kellhofer's supervisor, David Spradlin, informed him that he was selected for random testing.  That afternoon, Kellhofer reported for the random drug test.

---

[1] DOT covered positions are those requiring a Commercial Driver's License.
[2] CSP and the union had been in negotiations since June 2003, but were unable to agree on a new collective bargaining agreement until September 12, 2003.  Therefore, from July 15, 2003 through September 12, 2003, there was no collective bargaining agreement in place between CSP and IBEW.

{¶ 7}  A few days later, Kellhofer was notified by the Medical Review Officer (MRO), Dr. David Hall, that he tested positive for marijuana.  That same day, Kellhofer informed CSP's Human Resources Representative, Jamie Beckelhimer, that he had tested positive on his random drug test.  According to Kellhofer's affidavit filed in the trial court, Beckelhimer informed him that he would be suspended without pay and gave him the telephone number for CSP's EAP plan administrator, Magellan Health Services, Inc. ("Magellan").  Beckelhimer also purportedly told Kellhofer during this initial conversation that in order to regain employment he would need to test negative and that he would have to do whatever the EAP administrator told him to do.

{¶ 8}  The next day, July 22, 2003, Beckelhimer and Spradlin hand delivered to Kellhofer a suspension letter.   The suspension letter stated, inter alia: "In the future, if you fail to follow through on any recommendations from the EAP, test positive for alcohol or drugs, or refuse to submit to a Company requested drug or alcohol test, your employment will be terminated."

{¶ 9}  Kellhofer was then referred to Kevin Mayse, Magellan's EAP case manager. Mayse informed Kellhofer that he would refer him to a substance abuse professional (SAP) who would evaluate him, decide his treatment, and make a recommendation for re-employment.  At Kellhofer's request, Mayse referred Kellhofer to a SAP near his home, Robert Frazier of Scioto Paint Valley Mental Health Center in Circleville, Ohio.

{¶ 10}  On July 31, 2003, SAP Frazier conducted his initial assessment of Kellhofer. SAP Frazier determined that Kellhofer needed 4 to 6 out-patient counseling sessions and decided that he could conduct the counseling sessions himself since no other certified substance abuse counselors were reasonably located within Kellhofer's commuting area.

{¶ 11}  After three sessions with SAP Frazier - the initial assessment on July 31, 2003, and follow-up sessions on August 14 and August 19 – Kellhofer had a self-paid drug test performed on August 19.  On August 20, Kellhofer learned that he had tested negative on the self-paid test and he informed Beckelhimer, Spradlin, Mayse, and SAP Frazier of the result.  At that time, Kellhofer also indicated that he was ready to take his official return-to-work drug test, which he understood had to be negative in order for him to regain employment.  That same day, SAP Frazier consented to Kellhofer's taking of a return-to-work drug test.

{¶ 12}  On August 21, 2003, Kellhofer took a return-to-work drug test.  He was informed by MRO Hall on August 27 that his return-to-work drug test was positive for marijuana.  That same day, Kellhofer took a second self-paid test, which tested negative.  Kelhoffer reported the negative test result to CSP.  On August 29, Kelhoffer took a third self-paid test.  The third self-paid test, a DOT chain of custody test, was also negative.  Kellhofer again informed CSP of the negative test.

{¶ 13}  On September 4, 2003, CSP terminated Kellhofer as a result of the positive return-to-work drug test.  A new collective bargaining agreement became effective on September 12.

{¶ 14}  After the termination, and at the insistence of Kellhofer, EAP case manager Mayse submitted a letter noting a possible explanation for the conflicting test results.  Specifically, Mayse explained that the positive return-to-work drug test could have been due to a "spike" in Kellhofer's metabolism – i.e. his body's fat cells could have stored enough THC to test positive on the return-to-work drug test despite no further drug use by Kellhofer.  The letter concluded that further testing of creatine levels could help explain whether the positive test was

due to recent drug use or past use. Kellhofer also procured a letter of support from SAP Frazier, in which Frazier concluded that the return-to-work drug test should be treated as a "false positive" in light of the negative self-paid tests.

{¶ 15} Kellhofer also filed a grievance regarding his termination through his union; but the grievance was denied by CSP. Furthermore, because there was no collective bargaining agreement in effect at the time of Kellhofer's termination, Kellhofer's union informed him that it could not arbitrate his grievance.

{¶ 16} Kellhofer originally filed suit in the United States District Court for the Southern District of Ohio pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging breach of contract and breach of duty of fair representation claims against CSP and his union, IBEW Local 1466. The district court dismissed those claims on the grounds that it lacked subject matter jurisdiction; and Kellhofer appealed. The United States Court of Appeals for the Sixth Circuit affirmed the trial court's judgment, holding that " * * * there was no collective bargaining provision requiring arbitration of grievances in effect when Kellhofer failed the two drug tests and when [CSP] discharged him."

{¶ 17} In 2008, Kellhofer filed a complaint in the Ross County Court of Common Pleas, bearing Case No. 08CI000998 and alleging state law breach of contract and promissory estoppel claims against CSP and breach of contract claims against Magellan. After significant discovery and motion practice, Kellhofer voluntarily dismissed that case without prejudice in March 2010. Kellhofer[3] then re-filed the same claims, against the same defendants,[4] in March 2011.

---

[3] Kellhofer's wife, Sandra K. Kellhofer, was also named as a plaintiff, but it was agreed among the parties and trial counsel that the claims belonged solely to Kellhofer.

{¶ 18}  CSP filed a motion for summary judgment on all the claims asserted against it. After the motion was fully briefed by the parties, the trial court issued a decision granting CSP summary judgment.  The trial court determined that while issues of fact existed as to whether an express or implied contract had been entered into by the parties to return Kellhofer to work following successful completion of the EAP and a negative return-to-work drug test and that issues of fact existed as to whether a similar promise was made and detrimentally relied upon by Kellhofer; it was undisputed that Kellhofer had breached the terms of any purported contract or promise by testing positive for drugs a second time.  Thus, the trial court concluded that even if it were to assume that an implied contract existed or that a promise had been made, Kellhofer "violated the terms of the implied contract by testing positive on his back-to-work drug test" and Kellhofer "failed to meet the conditions of the promise requiring him to pass a back-to-work drug test administered by his employer."  A journal entry was subsequently entered by the trial court granting judgment to CSP.

{¶ 19}  Both of Kellhofer's assignments of error challenge the trial court's ruling on CSP's motion for summary judgment.  We review the trial court's decision on a motion for summary judgment de novo.  *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12.  Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate.  *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

---

[4] Magellan filed a motion for summary judgment arguing that its intervening bankruptcy action discharged the claims against it.  Magellan's motion for summary judgment was granted, and the claims against Magellan are not at issue in this appeal.

{¶ 20} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Id.*

{¶ 21} Furthermore, in order to succeed on a breach of contract claim, the plaintiff must demonstrate that: (1) a contract existed; (2) the plaintiff fulfilled his obligations; (3) the defendant breached his obligations; and (4) damages resulted from this breach. *Chaney v. Ramsey*, 4th Dist. Pike No. 98CA614, 1999 WL 217656, *5 (Apr. 7, 1999), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2nd Dist.1994).

{¶ 22} For his first assignment of error, Kellhofer contends that an implied contract of continued employment was created between himself and CSP, the terms being that if he complied with the provisions of the Drug Testing Program and requirements of the EAP he would return to work. Specifically, Kellhofer argues that "[t]he written notice of suspension, the terms of the Drug Testing Program and accompanying oral statements of Beckelhimer constitute an offer of a return to work agreement on the part of CSP which [he] accepted through his

performance in entering into and complying with the terms of the EAP and the CSP Drug Testing Program." [Brief at 15.]

{¶ 23} Furthermore, Kellhofer alleges that CSP breached the implied contract by negligently administering the EAP. Kellhofer alleges that the Drug Testing Program required the EAP plan administrator to set a prescribed time frame in which he had to pass the return-to-work drug test, and that the EAP failed in this regard.

{¶ 24} Alternatively, Kellhofer contends that there is an issue of material fact regarding the interpretation of the alleged implied contract that precludes summary judgment. Kellhofer acknowledges that he needed to test negative before returning to work. He also acknowledges that he understood that once he returned to work, a subsequent positive test would result in his termination. He disputes, however, that he was only entitled to one opportunity to pass his return-to-work drug test. Instead, Kellhofer contends that the Drug Testing Program, the terms of his suspension letter, and the oral representations of the CSP agents all contemplated multiple attempts at the return-to-work drug test, so long as he tested negative within a prescribed time frame.

{¶ 25} CSP, on the other hand, contends first and foremost that the parties did not enter into an implied contract for continued employment. Alternatively, CSP argues that if such an agreement was created, Kellhofer failed to perform the conditions of the agreement by testing positive on his return-to-work drug test; and thus, they are entitled to judgment as a matter of law.

{¶ 26} Because we find that CSP would be entitled to judgment even if an implied contract of continued employment had been entered into by the parties, we decline to address the

issue regarding the existence of said contract.  Rather, assuming that an implied contract existed, it is clear that Kellhofer did not fulfill his obligations under the agreement.  Accordingly, his breach of contract claim fails as a matter of law.

{¶ 27}  Kelhoffer contends that the Drug Testing Program, the suspension letter, and the oral representations of Beckelhimer control the terms of the purported agreement.  The Drug Testing Program clearly states, however, that a second positive test by an employee will result in termination.  Similarly, the suspension letter clearly and unambiguously states that a future positive test would result in termination.  Moreover, Kellhofer was aware from his conversations with Beckelhimer that he needed to test negative before returning to work.

{¶ 28}  As noted above, in order to succeed on a breach of contract claim the plaintiff must fulfill his obligations under the contract.  Here, the terms of the contract, if one in fact existed, clearly required that Kellhofer, having already failed a random test, refrain from testing positive on any subsequent drug test.  Because Kellhofer did test positive on a subsequent drug test, he cannot succeed as a matter of law on his breach of contract claim against CSP.

{¶ 29}  We also find Kellhofer's interpretation argument unpersuasive. In interpreting a contract, "the primary and paramount objective is to ascertain the intent of the parties so as to give effect to that intent." *Heskett Ins. Agency, Inc. v. Braunlin*, 4th Dist. Ross No. 11CA3234, 2011-Ohio-6100, ¶ 13, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989).  "Common words must be given their ordinary meaning unless manifest absurdity would result or some other meaning is clearly evidenced from the face or overall contents of the written instrument." *Id.*

{¶ 30} "Where a contract is clear and unambiguous, its interpretation is a matter of law, and summary judgment is appropriate." *Lewis v. Mathes*, 161 Ohio App.3d 1, 2005-Ohio-1975, 829 N.E.2d 318, ¶ 19 (4th Dist.), citing *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). "Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." *Id.*, citing *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55, 716 N.E.2d 1201 (2nd Dist.1998). "When ambiguity exists, the interpretation of the parties' intent constitutes a question of fact." *Id.*

{¶ 31} At issue is the language of the Drug Testing Program, Section X, which states as follows:

Section X

Positive Drug Test Results

A.      A first time random positive drug test will result in a suspension

without pay and:

1.      a referral will be made to the Employee Assistance

Program (EAP). The employee will be required to

follow through on any recommendations made by the

EAP and test negative before returning to work. Failure

in this regard and/or failure to test negative within a time

frame prescribed by the EAP will result in the

employee's discharge.

2.      after returning to work, the employee will be subject to

follow-up/monitoring testing based on the

recommendation of the EAP. There is a minimum

requirement of at least 6 tests in the first 12 months after

return. * * *

C.      An employee who refuses to be tested, otherwise fails to cooperate in

the administration of a test, or who tests positive a second time will be

discharged.

Also at issue is the language of the suspension letter, which states:

On July 17, 2003, you tested positive for marijuana, which is in violation of

AEP's Alcohol/Drug Policy. Effective July 22, 2003, you are suspended without

pay until it is determined by the Medical Review Officer (MRO) and your

Employee Assistance Program (EAP) counselor that you can return to work.

After returning to work, you will be subject to follow-up testing, in addition to

any applicable random alcohol or drug-testing program.

In the future, if you fail to follow through on any recommendation from the EAP,

test positive for alcohol or drugs, or refuse to submit to a Company requested

drug or alcohol test, your employment will be terminated.

{¶ 32} Contrary to Kellhofer's assertions, the above language does not contemplate that

an employee may take as many return-to-work drug tests as is necessary to produce a negative

result within a prescribed time period. While the parties could have anticipated such a situation,

they did not do so. Furthermore, the language of the so-called implied contract of continued

employment is not ambiguous simply because the policies and suspension letter do not set forth that Kellhofer had only "one-shot" at his return-to-work drug test. Rather, we believe that the above quoted language is clear and unambiguous; that reasonable minds could only conclude that once an employee fails a random drug test, any subsequent failure, albeit a return-to-work drug test or otherwise, subjects the employee to termination.

{¶ 33} Accordingly, we find that Kellhofer's first assignment of error is without merit.

{¶ 34} In his second assignment of error, Kellhofer contends that the trial court erred in granting summary judgment in favor of CSP on his claim of promissory estoppel. Specifically, Kellhofer asserts that CSP's actions and the terms of the Drug Testing Program constituted a promise in which he reasonably believed that if he participated in the EAP and provided a negative return-to-work drug test, he could resume employment with the company.

{¶ 35} " 'The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.' " *Keaton v. Pike Community Hosp.*, 4th Dist. Pike No. 96CA579, 1997 WL 33965, \*5 (Jan. 27, 1997), quoting *Kelly v. Georgia-Pacific Corp.*, 46 Ohio St.3d 134, 545 N.E.2d 1244 (1989), paragraph three of the syllabus; *see also Cassidy v. U.S. Health Corp.*, 4th Dist. Scioto No. 2158, 1994 WL 88942, \*9 (Mar. 18, 1994) ("When determining whether the doctrine of promissory estoppel should be applied, the trial court must determine whether the employer made representations and reasonably expected the employee to rely on those representations, and whether the employee relied on those representations and consequently suffered detrimental reliance."). The doctrine of promissory estoppel is somewhat limited in the employment context, however, in that a

promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel claim.  *Cassidy* at *9, citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), paragraph two of the syllabus.

{¶ 36}  In the case sub judice, even if we were to assume that a "specific promise of continued employment" was made by CSP, Kellhofer's promissory estoppel claim fails for the same reason that his implied contract claim fails.  Kellhofer failed to fulfill the conditions of any promise of continued employment by testing positive on his return-to-work drug test; and therefore, he cannot sustain an action for breach of contract or promissory estoppel against CSP. Accordingly, Kellhofer's second assignment of error is without merit.

{¶ 37}  Based on the foregoing, we conclude that no issues of fact exist pertaining to any breach of contract or promissory estoppel. Therefore, CSP is entitled to judgment as a matter of law.  The judgment of the Ross County Court of Common Pleas is affirmed.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. and Harsha, J.:  Concur in Judgment and Opinion.

For the Court

By:_____

Marie Hoover, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.