[Cite as *PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2015-Ohio-3386.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PNC BANK, N.A. | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26408 |
| | : | |
| v. | : | Trial Court Case No. 2012-CV-7060 |
| | : | |
| SPRINGBORO MEDICAL ARTS, INC., et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| *Defendant-Appellant* | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2015.

. . . . . . . . . . .

JEFFREY M. HENDRICKS, Atty. Reg. No. 0066889, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202
      Attorney for Plaintiff-Appellee-PNC Bank, N.A.

ROGER SOROKA, Atty. Reg. No. 0082195, 503 South Front Street, Suite 205, Columbus, Ohio 43215
      Attorney for Defendant-Appellee-Desiderio Pina

CHAD E. BURTON, Atty. Reg. No. 0078014, BRANDON R. COGSWELL, Atty. Reg. No. 0081542, 714 East Monument Street, Dayton, Ohio 45402
      Attorneys for Defendant-Appellant-Joshua Wright

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Joshua Wright, appeals from a summary judgment rendered in favor of Plaintiff-Appellee, PNC, National Association ("PNC"). In support of his appeal, Wright contends that the trial court erred in concluding that extrinsic evidence was inadmissible in determining the intent of the parties' settlement agreement. Wright further contends that the trial court erred in refusing to enforce the settlement agreement and in rendering summary judgment in favor of PNC.

{¶ 2} We conclude that the trial court did not err in refusing to consider extrinsic evidence, because the parties' settlement agreement was fully integrated and was not ambiguous. However, the trial court did err in rendering summary judgment in favor of PNC. The undisputed facts indicate that Wright did not breach the settlement agreement. Wright paid as required, and his financial statement indicated that his entire property applicable or subject to the payment of debts did not exceed the amount stipulated in the settlement agreement. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I. Facts and Course of Proceedings

{¶ 3} In October 2012, PNC filed a complaint against Joshua Wright, Springboro Medical Arts, Inc. ("SMA"), and Desiderio Pina, According to the complaint, SMA owed PNC a total of approximately $442, 238, including principal, interest, and late fees from August 2012. The complaint also alleged that Wright and Pina had both executed and delivered unconditional guarantees of both notes, and owed the entire amount.

{¶ 4} An answer was filed the same day, confessing judgment on behalf of SMA in

the total amount of both notes, and a judgment entry to that effect was filed the next day. Subsequently, both SMA and Wright filed cross-claims against Pina, alleging matters like fraud, breach of fiduciary duty, and fraudulent inducement. They also requested contribution from Pina for amounts owed on the promissory note. Pina filed an answer to the complaint, but did not assert any cross-claims.

{¶ 5} In April 2013, the case was referred to mediation, and a mediation conference was set for June 5, 2013. In the meantime, PNC filed a motion for summary judgment against Wright and Pina, based on their guarantees of the notes.

{¶ 6} After being cancelled once, the mediation ultimately took place on July 5, 2013. At that time, the parties reached the following agreement, which was transcribed by the mediator:

Come now the parties who are setting forth herein the essential terms of their settlement which will dispose of claims set forth in this legal proceeding. Counsel for the parties shall draft in formal legal language and form such additional documents as are required to give effect to these outlined terms.

In the interim, the Court shall enter an Order of Dismissal to remove the case from the active court docket. The parties understand that such a dismissal is without prejudice and contains language permitting the parties without further court costs to reopen the case should this settlement agreement not be completed in a reasonable time period.

1. Defendant Joshua Wright shall pay to the Plaintiff the amount of $130,000, on or before 12/1/13, with payment of $40,000 by 8/1/13,

payment of $40,000 by 10/1/13, and $50,000 by 12/1/13. Upon said payment, Plaintiff releases Joshua Wright from any further liability whatsoever. Based on financial statement showing no more than $160,000 in assets. Wright will execute agreed judgment for full amount that will be void upon payment set out above.

2. Joshua Wright and Desiderio Pina hereby release any claims against each other that they currently could raise.

3. Springboro Medical Arts, Inc. hereby releases all claims it might have against Desiderio Pina and Joshua Wright.

4. Desiderio Pina shall be solely responsible for payment to PNC for all remaining sums due on the subject notes that form the basis of this law suit.

5. Defendants shall split equally any remaining court costs. After judgment against Dr. Pina is filed case will be administratively dismissed subject to reactivation.

6. Joshua Wright shall release PNC Bank from any and all claims.

7. PNC and Desiderio Pina shall continue to work in good faith to work at a payment arrangement. But no payment arrangement is a condition of this agreement.

8. Financials from Dr. Wright will be transmitted to Plaintiff's counsel 7/12/13.

Doc. #56, Ex. A.

{¶ 7} The opening two paragraphs of the agreement were standard boilerplate

language apparently generated by the mediator; the remaining paragraphs, numbered from one to eight, were handwritten. The document was signed by the attorneys for the parties, and all parties, other than PNC. PNC's attorney appeared for the mediation, but a representative for PNC was not present. However, the representative was available by telephone.

{¶ 8} No formal legal document was prepared, and the case was not administratively dismissed. Instead, on July 31, 2013, PNC filed a notice of a failure of an express condition precedent to settlement. In the notice, PNC contended that the financial statement provided by Wright on July 12, 2013, indicated that he had assets exceeding $160,000. PNC asked the trial court to declare the agreement void, and to proceed with PNC's summary judgment motion.

{¶ 9} On August 9, 2013, Wright filed a motion, asking the court to enforce the settlement agreement. In the motion, Wright contended that the settlement agreement was based on the fact that his collectible assets would not exceed $160,000. Wright argued that PNC had improperly included amounts that would be not be collectible, and also noted that PNC had rejected the check that he had tendered in payment of the first installment of the settlement agreement. Wright also included a certification from his attorney regarding what had occurred during the mediation negotiations.

{¶ 10} After opposing and reply memoranda had been filed, the magistrate filed a decision in January 2014, concluding that an evidentiary hearing should be held to determine whether a meeting of the minds occurred in connection with the settlement agreement. The magistrate also concluded that the parol evidence rule did not apply because: (1) the settlement agreement was not a fully integrated contract; and (2) the

terms "assets" and "financials" were not defined in the agreement and were ambiguous. Previously, the magistrate had also recommended that PNC should be granted summary judgment against Pina, and the trial court filed a judgment entry to this effect after Pina failed to file objections to the magistrate's report.

{¶ 11} After PNC objected to the magistrate's report, the trial court sustained the objection in April 2014. The trial court found that the contract was fully integrated and that the terms were not ambiguous. As a result, the court held that the parol evidence rule applied, and extrinsic evidence of intent could not be considered.

{¶ 12} In a subsequent decision, the magistrate recommended denial of Wright's motion to enforce the settlement agreement, because Wright's financial statement showed more than $160,000 in assets. In addition, the magistrate recommended that PNC's motion for summary judgment on Wright's guarantee of the promissory notes should be granted. Wright objected to the magistrate's report, but the trial court overruled the objections in September 2014. On September 12, 2014, the trial court filed a judgment entry finding Wright liable for the entire amount of the debt, and included a Civ.R. 54(B) certification. Wright now appeals from the summary judgment and the decision concluding that the parol evidence rule applied.

## II. Admissibility of Extrinsic Evidence

{¶ 13} Wright's First Assignment of Error states that:

The Trial Court Erred in Sustaining PNC Bank's Objections and Overruling the Magistrate's January 28, 2013 Decision Which Found that Extrinsic Evidence Is Admissible to Determine the Intent of the Parties.

{¶ 14} Under this assignment of error, Wright initially contends that the trial court erred in finding that the settlement agreement was fully integrated. In this regard, Wright argues that the agreement was not final because it provided that the terms were "outlined," and that the parties were required to draft an agreement in formal legal terms.

{¶ 15} "Contract interpretation is a matter of law, and questions of law are subject to de novo review on appeal." (Citation omitted.) *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38. Thus, we apply the same standards as the trial court.

{¶ 16} "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." (Citation omitted.) *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. "Under such circumstances, a court may not go beyond the plain language of the agreement to determine the parties' rights and obligations, and it may not consider parole [sic] evidence of the parties' intentions." (Citations omitted.) *SFJV 2005, L.L.C. v. Ream*, 187 Ohio App.3d 715, 2010-Ohio-1615, 933 N.E.2d 819, ¶ 22 (2d Dist.).

{¶ 17} "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 *Williston on Contracts,* Section 33:4, at 569-570 (4th

Ed.1999). "Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. * * * 'The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.' " *Id.*, quoting *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 324, 109 N.E.2d 265 (1952), paragraph one of the syllabus.

{¶ 18} In *Galmish*, the court further explained that:

"The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations."

*Galmish* at 27, quoting *In re Gaines' Estate*, 15 Cal.2d 255, 264-265, 100 P.2d 1055 (1940).

{¶ 19} An "integration" for purposes of the parol evidence rule "is '[t]he full expression of the parties' agreement, so that all earlier agreements are superseded, the effect being that neither party may later contradict or add to the contractual terms.' " *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 28 (Cupp, J., concurring), quoting *Black's Law Dictionary* 880 (9th Ed.2009). "If an integration is a 'complete integration,' then it fully expresses the intent of the parties, and parol evidence is inadmissible. * * * On the other hand, if an integration is a 'partial integration,' then it does not fully express the parties' intent, and '[p]arol (extrinsic) evidence is admissible to clear up ambiguities with respect to the terms that are not integrated.' " *Id.*, quoting *Black's* at 880.

{¶ 20} "A contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing." (Citations omitted.) *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 11. "The question of partial integration must be determined from the four corners of the document itself * * *. Furthermore, in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms." (Citation omitted.) *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 276, 638 N.E.2d 572 (1994).

{¶ 21} After reviewing the evidence, we agree with the trial court that the agreement between Wright and PNC was fully integrated. Although the settlement agreement stated that the parties "shall draft in formal legal language and form such additional documents as are required to give effect to these outlined terms," this does not mean that additional documents were, in fact, required to create a binding agreement.

The pertinent consideration is whether the outlined terms, which were agreed to in writing by the parties or their authorized representatives, contain all the essential terms for a binding contract.

{¶ 22} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. (Other citation omitted.) "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." (Citation omitted.) *Kostelnik* at ¶ 16. "[A] meeting of the minds occurs if 'a reasonable person would find that the parties manifested a present intention to be bound to an agreement.' " *Champion Gym & Fitness, Inc. v. Crotty*, 178 Ohio App.3d 739, 2008-Ohio-5642, 900 N.E.2d 231, ¶ 12 (2d Dist.), quoting *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, ¶ 12 (9th Dist.) "And to be enforceable, 'the contract must be definite and certain.' " *Rayess* at ¶ 19, quoting *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). (Other citation omitted.)

{¶ 23} A review of the terms of the settlement agreement, as outlined above, indicates that they meet all requirements needed to create a binding agreement. A reasonable person would also conclude that the parties manifested a present intention to be bound by the settlement agreement. In addition, the contract was definite and

certain, and contained bargained-for consideration, legality of object, and all other necessary requirements.

**{¶ 24}** Furthermore, we disagree with the contention that the statement about creating a more formal document prevented the agreement from being enforced. As was mentioned, the statement did not mean that a more formal agreement was required; it was simply boilerplate language that was apparently used in mediation proceedings.

**{¶ 25}** The Supreme Court of Ohio has said "courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both." (Citations omitted.) *Richard A. Berjian, D. O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151, 375 N.E.2d 410 (1978).

**{¶ 26}** In *Berjian*, the court held that a doctor would be bound by a limitation of liability clause contained in a directory assistance agreement, even though he had never signed the agreement. The court noted that the doctor's office manager had placed the order for services, and was sent an agreement. The manager read the agreement and although alerted to the need to notify Ohio Bell of any changes or corrections to be made, failed to do so. Instead, she contacted Ohio Bell only to ask for an abbreviation to be added to the doctor's name. *Id.* at 152-153. Under these circumstances, the court held that Ohio Bell was justified in believing that the doctor had accepted the terms on the contract. *Id.* at 153.

**{¶ 27}** Although these facts were sufficient for the contract in *Berjian* to be enforced, the facts in the case before us are even stronger, as the parties actually entered into and signed a written agreement. They also differ from the facts in *Artisan*

*Mechanical, Inc. v. Beiser*, 12th Dist. Butler No. CA2010-02-039, 2010-Ohio-5427. In that case, the court of appeals held "there was clear evidence demonstrating that the parties did not intend to be bound by the terms of the parties' proposed settlement agreement until both parties executed a formal written document." *Id.* at ¶ 34. Unlike the case before us, however, *Artisan* involved an oral settlement agreement. *Id.* at ¶ 28. In addition, the parties in *Artisan* continued to negotiate on the terms, and the actions of both sides indicated they did not intend to be bound until the agreement was placed in a formal written document. *Id.* at ¶ 3-18 and 34-35.

{¶ 28} We have previously found a mediation agreement unenforceable where the mediation notice stated that "If an agreement is reached in mediation, it will be reduced to writing by the mediator, reviewed, approved and signed by all participants and their attorneys, and a copy submitted to the Court by the mediator." *Owens v. Bailar*, 2d Dist. Champaign No. 2008CA29, 2009-Ohio-2741, ¶ 18. In *Owens*, one party refused to sign the mediation report because he believed it did not embody the terms of the agreement. *Id.* at ¶ 19. In contrast, Wright signed the written mediation agreement, and we must conclude that he intended to be bound by the terms as expressed at that time, despite the agreement's statement that a more formal legal document could be prepared. Again, as we noted earlier, the settlement agreement complies with all requirements needed to create a binding contract.

{¶ 29} Wright's second argument in favor of admitting extrinsic evidence is that the term "assets" is ambiguous. According to Wright, this term was not defined in the agreement, and the parties contemplated that its application would be confined only to collectible, non-exempt assets.

{¶ 30} "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." (Citation omitted.) *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55-56, 716 N.E.2d 1201 (2d Dist.1998). "If an ambiguity exists in a contract, then it is proper for a court to consider 'extrinsic evidence,' i.e., evidence outside the four corners of the contract, in determining the parties' intent." *Id.*, citing *Blosser v. Carter*, 67 Ohio App.3d 215, 219, 586 N.E.2d 253 (4th Dist. 1990). "Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement." *Id.* "Courts may not, however, use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is, apparent on the face of the contract." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir.1996)

{¶ 31} A common definition of assets is: "the entire property of a person, association, corporation, or estate applicable or subject to the payment of debts." *Miriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/asset (accessed June 8, 2015). This is nearly identical to the definition used by the trial court, from a different dictionary. *See* Doc. #80, p. 7. We agree with the trial court that the term "assets" is not ambiguous and does not require the addition of extrinsic evidence to be understood. As a result, the trial court did not err in refusing to admit extrinsic evidence about the discussions that occurred during mediation. However, this does not resolve the issue of whether Wright complied with the settlement agreement, and we will consider

that matter when we evaluate the Second Assignment of Error.

{¶ 32} Based on the preceding discussion, the First Assignment of Error is overruled.

### III.   Propriety of Summary Judgment

{¶ 33} Wright's Second Assignment of Error states that:

The Trial Court Erred in Granting PNC Bank's Motion for Summary Judgment.

{¶ 34} Under this assignment of error, Wright contends that the trial court erred in granting summary judgment in favor of PNC because Wright complied with the settlement agreement by tendering his first payment and by providing a financial statement showing that he possessed less than $160,000 in non-exempt assets.   The trial court and magistrate concluded that Wright failed to comply with the settlement agreement because he did not produce a financial statement showing that he had total assets of less than $160,000.

{¶ 35} As was noted, the accepted definition of assets is "the entire property of a person * * * applicable or subject to the payment of debts."   However, the trial court considered only Wright's "total assets" and did not consider the part of the general definition that defines assets as property "applicable or subject to the payment of debts."

{¶ 36} In non-bankruptcy situations, R.C. 2329.66(A) provides that every person domiciled in the state may hold various items of property "exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order * * *."   The statute sets forth various items that are exempt, including – as pertinent here – (1) a person's interest

in a residence, not to exceed $125,000; (2) "[t]he person's interest, not to exceed four hundred dollars, in cash on hand, money due and payable, money to become due within ninety days, tax refunds, and money on deposit with a bank, savings and loan association, credit union, public utility, landlord, or other person, other than personal earnings"; (3) "[t]he person's interest in contracts of life or endowment insurance or annuities, as exempted by section 3911.10 of the Revised Code"; and (4) "the person's rights to or interests in a pension, benefit, annuity, retirement allowance, or accumulated contributions * * *."  R.C. 2329.66(A)(1)(b), (3), (6)(b), and (10)(a).

{¶ 37} Similarly, R.C. 1336.01, which defines assets for purposes of the Uniform Fraudulent Transfer Act, exempts certain assets from the property of a debtor.  In this regard, R.C. 1336.01(B) states that:

"Asset" means property of a debtor, but does not include any of the following:

(1) Property to the extent it is encumbered by a valid lien;

(2) Property to the extent it generally is exempt under nonbankruptcy law, including, but not limited to, section 2329.66 of the Revised Code;

(3) An interest in property held in the form of a tenancy by the entireties created under section 5302.17 of the Revised Code prior to April 4, 1985, to the extent it is not subject to process by a creditor holding a claim against only one tenant.

{¶ 38} Applying these criteria to the financial statement Wright submitted under seal (and not disclosing any specific amounts), the total assets of Wright that are subject to the payment of debts amount to less than $160,000.   These assets consist of his cash

in banks and marketable securities. The remainder of the assets listed in the financial statement fall within the categories outlined above, as they involve Wright's accumulated contributions to his IRA or pension, his interest in his personal residence, and the value of his life insurance policy. There is also no dispute that Wright tendered the amount required under the settlement agreement in a timely fashion.

{¶ 39} Based on the undisputed facts regarding the financial statement that was submitted and Wright's payment under the settlement agreement, as required, Wright did not breach the settlement agreement. The trial court, therefore, erred in rendering summary judgment in PNC's favor.

{¶ 40} Accordingly, Wright's Second Assignment of Error is sustained.

IV. Conclusion

{¶ 41} Wright's First Assignment of Error having been overruled, and his Second Assignment of Error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., concurring in judgment:

{¶ 42} I concur that the summary judgment in PNC's favor should be reversed.

{¶ 43} However, I would find that the term "asset" as used by the parties was ambiguous; to the extent our reversal and remand could be interpreted as a mandate that the trial court enter judgment for Appellant, I disagree.

. . . . . . . . . .

Copies mailed to:

Jeffrey M. Hendricks
Roger Soroka
Chad E. Burton
Brandon R. Cogswell
Hon. Michael W. Krumholtz