[Cite as *Airtron, Inc. v. Tobias*, 2021-Ohio-2213.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| AIRTRON, INC. | : | |
| | : | |
| Plaintiff-Appellee/Cross-Appellant | : | Appellate Case Nos. 29012 & 29019 |
| | : | |
| | : | Trial Court Case No. 2020-CV-2802 |
| v. | : | |
| | : | (Civil Appeal from |
| JAMES TOBIAS, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellants/Cross-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2021.

. . . . . . . . . . .

STEPHEN A. WEIGAND, Atty. Reg. No. 0083573 & D. JEFFREY IRELAND, Atty. Reg. No. 0010443, 110 North Main Street, Suite 1600, Dayton, Ohio 45402
   Attorneys for Plaintiff-Appellee/Cross-Appellant, Airtron, Inc.

DAVID C. GREER, Atty. Reg. No. 0009090, JAMES H. GREER, Atty. Reg. No. 0046555, & KEVIN C. QUINLAN, Atty. Reg. No. 92999, 6 North Main Street, Suite 400, Dayton, Ohio 45402
   Attorneys for Defendant-Appellant/Cross-Appellee, James Tobias

THOMAS M. GREEN, Atty. Reg. No. 0016361, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402
   Attorney for Defendants-Appellants/Cross-Appellees, A-1 Mechanical, LLC & Daniel Tobias

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} This appeal stems from various employment contracts between Defendant-Appellant/Cross-Appellee James Tobias and his former employer, Plaintiff-Appellee/Cross-Appellant Airtron, Inc., as well as Tobias's involvement in the creation of a business that competes with Airtron. James Tobias appeals from the trial court's ruling that he breached a non-disclosure, non-competition, and non-solicitation agreement. Additionally, he appeals the granting of a permanent injunction against him related to breaching that agreement. Finally, James Tobias appeals from a decision regarding whether other unresolved claims are subject to a jury trial. Defendants-Appellants A-1 Mechanical and Daniel Tobias also appeal the enforcement of the non-compete provisions. Airtron appeals the trial court's judgment against it and in favor of James Tobias, which concluded that it breached a contract regarding employee bonuses. For the reasons that follow, the appeals of James Tobias, Daniel Tobias, and A-1 Mechanical will be dismissed for lack of a final appealable order. The trial court's judgment in favor of Tobias and against Airtron will be reversed.

## I. Facts and Procedural History

{¶ 2} The business relationship between James Tobias and Airtron, Inc. began in 1982 when the company hired Tobias to do heating and air conditioning work. That employment relationship lasted until 2008, at which time he was terminated. Airtron did, however, pay James Tobias his salary for a year, and in return, he honored a one-year non-compete agreement.

{¶ 3} In 2009, James Tobias started his own company, Five-Star, which he owned and operated until 2013, when he was re-hired by Airtron as a Commercial and Consumer Salesperson and brought his Five-Star employees and customers with him. This new

position required a non-disclosure, non-solicitation, and non-competition agreement ("the Agreement"), which he signed on May 28, 2013.

{¶ 4} By signing the document, James Tobias acknowledged that he would have access to confidential proprietary information of Airtron, including information related to the company's method of estimating and pricing, mechanical designs, supplier information and material pricing, policy manuals, computer programs, and customer lists and information. He agreed to never (during or after his employment) communicate the information to anyone else or use it for his own benefit.

{¶ 5} James Tobias agreed not to compete with Airtron directly or indirectly in the residential, multi-family, and light commercial plumbing and HVAC markets within a 100-mile radius of his geographic territory. The Agreement also contained a non-solicitation covenant in which James Tobias agreed not to solicit (or to assist in such solicitation) or hire any employee, including former employees, who had been employed by Airtron within the past year. In addition, he agreed not to solicit any clients or customers of the company within one year of the termination of his employment. Another feature of the Agreement was that it contained a "Waiver of Jury Trial" provision which stated: "The parties hereto waive all right to trial by jury in any action or proceeding to enforce or defend any rights under this agreement and any document executed in connection herewith."

{¶ 6} The company, in turn, agreed to pay Tobias $25,000 as consideration for signing the Agreement.

{¶ 7} On February 10, 2014, James Tobias was promoted to Vice President of Airtron's West Chester division. His new employment contract included a salary, a commission, a bonus under the Vice President Incentive Plan, an enhanced bonus under

the Enhanced Incentive Plan, and a vehicle allowance. A new Vice President Incentive Plan was signed each year. Between 2014 and 2018, James Tobias received an annual salary of approximately $104,000 plus bonuses as established by the Vice President Incentive Plans. The bonuses were always paid out in March.

{¶ 8} The 2019 Vice President Incentive document, which is a central issue in this appeal, was signed by James Tobias in January 2019, and the plan was scheduled to run from January 1 through December 31, 2019. His 2019 bonus was to be $173,118 and should have been paid out in March 2020.

{¶ 9} In February 2020, James Tobias attended a meeting about the development of a new HVAC company to be called A-1 Mechanical. A-1 Mechanical is a direct competitor of Airtron and operates within a 100-mile radius of Airtron's West Chester location where James Tobias was vice president. At trial, he affirmed that he was considering other employment opportunities because he was concerned about the financial status of Airtron's "grandparent" company, Centrica.

{¶ 10} On March 25, 2020, James Tobias, along with the other Airtron vice presidents, learned from Airtron Director Jeoffrey Morrow that the 2019 bonuses would not be paid out in March due to financial concerns brought about by COVID-19. This prompted the vice presidents to inquire of Morrow if their restrictive covenants would be enforced. Morrow relayed the question via email to Jeff Fralix, an executive at Direct Energy, Airtron's parent company, to which Fralix responded: "Yes, will enforce non-competes."

{¶ 11} The evidence suggests that throughout the late winter of 2019 and early spring of 2020, James Tobias, along with his nephew, Daniel Tobias (who was also an

Airtron employee), met and communicated with A-1 Mechanical team members and assisted with various issues related to the launch of the business, including warehouse needs and securing bids for printers. At trial, James Tobias testified that on May 7, 2020, he emailed Eric Salzer (a founding member of A-1 Mechanical) a photograph of Airtron's commission schedule and then, on or about May 13, 2020, both James and Daniel Tobias received A-1 Mechanical email addresses.

{¶ 12} Evidence was also presented at trial that indicated that James Tobias, before leaving his job at Airtron, began funneling potential jobs and clients from Airtron to A-1 Mechanical. In one case, shortly after James Tobias left Airtron, a major project, which had been bid on and awarded to Airtron, switched to A-1 Mechanical after receiving a slightly lower estimate.

{¶ 13} In early June 2020, both James and Daniel Tobias resigned their positions with Airtron to begin working for A-1 Mechanical. Around that same time, James Tobias wiped his work cell phone of all data. On June 10, the day after he resigned from Airtron, James Tobias texted prospective (and oftentimes current Airtron) customers his new contact information at A-1 Mechanical. Further, the trial testimony and exhibits indicated that he facilitated the hiring of a handful of employees away from Airtron.

{¶ 14} On July 20, 2020, Airtron filed its verified complaint for a temporary restraining order and preliminary and permanent injunctive relief, as well as damages. James Tobias and A-1 Mechanical were listed as defendants. The suit asserted the following claims against James Tobias: breach of contract, breach of the duty of loyalty, good faith, and fair dealing, tortious interference, and declaratory judgment. Airtron levied claims of tortious interference and theft of trade secrets against A-1 Mechanical. That

same day, the trial court granted the temporary restraining order.

{¶ 15} James Tobias filed his answer with counterclaims on July 31, 2020. He asserted counterclaims for breach of contract, unjust enrichment, promissory estoppel, waiver, failure of consideration, public policy violations, intentional interference with economic interests, constructive termination, and punitive damages.

{¶ 16} A week later, Airtron amended its complaint, this time adding Daniel Tobias as a party. Allegations of theft of trade secrets, conversion, civil conspiracy, and fraudulent nondisclosure were also added against the defendants.

{¶ 17} On August 7, 2020, Airtron filed a motion to dismiss James Tobias's counterclaims, pursuant to Civ.R. 12(B)(6). The trial court sustained Airtron's motion to dismiss regarding the counterclaims for constructive termination, waiver, failure of consideration, and public policy. Later in the fall of 2020, the parties filed motions for summary judgment which were sustained in part and overruled in part. Specifically, A-1 Mechanical's motion for summary judgment was sustained in part as to Airtron's civil conspiracy claim, and Daniel Tobias's motion for summary judgment was sustained in part as to Airtron's claims for civil conversion and civil conspiracy.

{¶ 18} Also, in the lead up to a trial, the parties agreed to extend the temporary restraining order through the trial court's decision on the merits of Airtron's injunction request. Relatedly, the parties agreed to consolidate the hearing on the preliminary injunction with the trial on the merits of permanent injunctive relief. The parties also agreed that the trial, which was to be held on December 1, 2020, would be limited to the following issues:

(1) Whether Plaintiff Airtron should be granted a permanent injunction in relation

to Defendant James Tobias's Non-Disclosure, Non-Solicitation, and Non-Competition Agreement ("the Agreement") with Plaintiff.

(2) Whether the Defendant James Tobias on or before April 1, 2020 was entitled to payment from Plaintiff [Airtron] of his 2019 bonus.

(3) Whether any restrictive covenant in the Agreement was invalidated.

(4) Whether Defendant James Tobias's alleged reliance on an oral discussion with Airtron's Director regarding enforcement of the restrictive covenants was reasonable.

(5) Whether Plaintiff Airtron should be granted judgment against Defendant James Tobias for violation of the Agreement.

(6) Whether Defendant James Tobias should be granted a judgment against the Plaintiff for non-payment of his 2019 bonus.

{¶ 19} A few weeks before the trial, Airtron moved to strike James Tobias's jury demand, arguing that by entering into the Agreement, he waived that right. On November 17, 2020, the trial court sustained the motion, officially setting the proceeding as a bench trial.

{¶ 20} The three-day bench trial began on December 1, 2020, and involved testimony from seven witnesses, including James and Daniel Tobias. Eighty exhibits and hundreds of pages of documents were considered by the court.

{¶ 21} On January 11, 2021, the trial court (1) entered judgment in favor of Airtron and against James Tobias for breach of the non-disclosure agreement; (2) granted a permanent injunction in favor of Airtron and against James Tobias to prevent him from violating the terms of the Agreement through June 10, 2021; (3) granted judgment in favor

of James Tobias on his breach of contract counterclaim against Airtron for the company's failure to pay his 2019 bonus, plus interest. The trial court held that damages for James Tobias's breach of the Agreement would be determined at a later date. In its judgment entry, the trial court stated that its decision was a "final appealable order, and there is not just cause for delay for purposes of Civ.R. 54."

{¶ 22} James Tobias, Daniel Tobias, Airtron, and A-1 Mechanical all appeal the trial court's judgment.

II.     **Jurisdiction to consider James Tobias's assignments of error**

{¶ 23} James Tobias has raised three assignments of error, two of which stem from the trial court's conclusion that he breached the Agreement. While the trial court determined that James Tobias had breached his contract with Airtron, it did not, as per the agreement between the parties, determine the amount of damages owed. Rather, the court stated that damages would be decided later in a separate proceeding. Although none of the parties have raised this as a potential problem, we, sua sponte, take notice of the issue.

{¶ 24} An appellate court has jurisdiction to review only final orders or judgments of the lower courts in its district. Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.02.   We have no jurisdiction to review an order or judgment that is not final, and an appeal therefrom must be dismissed. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

{¶ 25} The concept of "final orders" is based on the rationale that "the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch

thereof." *Noble v. Colwell,* 44 Ohio St.3d 92, 94, 540 N.E.2d 1381 (1989). If an order is not final and appealable, then an appeals court does not have jurisdiction to review the matter, and the appeal must be dismissed. *Id.*

{¶ 26} "An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable." *Noble* at 96; *see Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus; *Jaballas v. Hastings Mut. Ins. Co.*, 2d Dist. Montgomery No. 28803, 2021-Ohio-737, ¶ 5. Of relevance to Airtron's breach of contract claim, R.C. 2505.02(B)(1) provides that "an order is a final order * * * when it is * * * an order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" Civ.R. 54(B) states, in relevant part:

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon express determination that there is no just reason for delay.

{¶ 27} The general purpose behind Civ.R. 54(B) is to effectuate the policy against piecemeal litigation and the potential injustice of delayed appeals in certain situations. *Noble* at 96. "Rule 54(B) makes mandatory the use of the language, 'there is no just reason for delay.'" *Id.*

{¶ 28} A liability finding without a damages finding is not final and appealable

where it does not "in effect determin[e] the action and preven[t] a judgment * * *." R.C. 2505.02(B)(1). *See Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, ¶ 31. "'As a general rule, even where the issue of liability has been determined, but a factual adjudication of relief is unresolved, the finding of liability is not a final appealable order * * *.'" *Id., quoting Noble* at 96. "Until such time as [a party's] damages, if any, are determined, the court is not in a position to enter an order from which an appeal will lie." *Frey v. Trenor Motor Co.*, 2d Dist. Clark No. 2907, 1992 WL 235726, *1 (Sept. 25, 1992). *See also Schlotterer v. Exempted Village School Dist.,* 3d Dist. Mercer No. 10-82-2, 1983 WL 7248, *2 (Apr. 26, 1983) (order which "disposed only of plaintiff's entitlement to reinstatement and back pay leaving the amount thereof undetermined, * * * did not constitute a final appealable order"); *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, ¶ 7 ("Generally, orders determining liability [that defer] the issue of damages are not final appealable orders under R.C. 2505.02[.]").

{¶ 29} Airtron's claims against James Tobias, much like the ones just cited, are essentially only half-way decided: the trial court ruled on liability, but not damages. In fact, it does not appear that a hearing or trial to determine damages has been scheduled. Because Airtron's suit against James Tobias has not been completely resolved, we do not have jurisdiction to review the trial court's finding of liability on Airtron's breach of contract claim.

{¶ 30} There is one more issue from James Tobias to be answered: whether his remaining, unresolved tort claims are subject to a jury waiver. James Tobias argues that the trial court erred when it ruled that issues remaining in the trial court in this bifurcated

case are not subject to jury determination. The trial court made this ruling in its November 17, 2020 "Decision, Order and Entry sustaining Plaintiff Airtron, Inc.'s motion to strike jury demand for certain claims," not in the judgment rendered after the bench trial.

{¶ 31} As we discussed above, certain criteria must be met for an order to be final and appealable. A final order is one "affecting a substantial right in an action which in effect determines the action and prevents a judgment[.]" R.C. 2505.02. On the other hand, an interlocutory order is one that relates to an intermediate matter in the case. "An order that neither disposes of all claims between the parties nor contains an express determination that there is no just reason for delay is an interlocutory order." *Trotwood v. S. Cent. Constr., L.L.C.*, 192 Ohio App.3d 69, 2011-Ohio-237, 947 N.E.2d 1291, ¶ 57.

{¶ 32} When an order is interlocutory, it remains subject to modification by the court unless it is certified suitable for appeal, or the action is terminated as to all claims and parties. *Id.* "Once a final judgment is issued terminating a case, all interlocutory orders are merged into the final judgment." *Lingo v. Ohio Cent. R.R.*, 10th Dist. Franklin No. 05AP-206, 2006-Ohio-2268, ¶ 17.

{¶ 33} The trial court's decision as to whether James Tobias waived a jury trial on all of his claims was interlocutory in nature. It did not dispose of any claims, nor did it prevent any judgment. Further, the appealed Decision, Order and Entry lacked all the language necessary to trigger our jurisdiction, and the trial court can modify its decision on jury waiver vis-à-vis the untried causes of action. The jury waiver question, therefore, is not properly before this court. James Tobias's appeals will be dismissed for lack of a final appealable order.

III.     **Daniel Tobias's and A-1 Mechanical's claims**

{¶ 34} Daniel Tobias and A-1 Mechanical have also appealed the trial court's rulings on Airtron's breach of contract claims, both in issuing the temporary restraining order and granting the permanent injunction against James Tobias. Specifically, they argue that the trial court erred in finding that Airtron established by clear and convincing evidence that it was entitled to injunctive relief. The ability to reach either of those conclusions, though, turns on Airtron's breach of contract claim against James Tobias.

{¶ 35} The breach of contract claim against James Tobias is not fully decided, because the issue of damages has not yet been addressed. Until the resolution of that claim becomes final and appealable, we do not have jurisdiction to decide if there were errors made in the judgment against James Tobias. "[W]hen a trial court does not resolve an entire claim, regardless of whether the order meets the requirements of Civ.R. 54(B), the order is not final and appealable." *Ibold v. Wharton*, 2017-Ohio-9388, 103 N.E.3d 101, ¶ 11 (4th Dist.).

{¶ 36} The injunction issue is not properly before us either. This conclusion is illustrated by *State ex rel. Michael DeWine Attorney General v. Big Sky Energy*, 11 Dist. Ashtabula No. 2012-A-0042, 2013-Ohio-437. In that case, the appellate court dismissed the appeal for lack of a final, appealable order where the trial court granted a permanent injunction to the appellee but had not yet made a determination as to damages. The Eleventh District found that without a determination of damages, the trial court's judgment was not final pursuant to Civ.R. 54(B) and R.C. 2505.02, and thus, it lacked jurisdiction to review it. *Id.* at ¶ 15. *See also Saint-Gobain/Norton Indus. Ceramics Corp. v. Parkhurst*, 11th Dist. Geauga No. 94-G-1871, 1994 WL 738730 (Dec. 30, 1994) (appeal dismissed

as not final where the court's order resolved the liability issue and granted a permanent injunction to appellee but did not determine damages); *Kinzel v. Ebner*, 2020-Ohio-4165, 157 N.E.3d 898 (6th Dist.).

{¶ 37} In this case, not only are James Tobias's appellate claims not properly before us, neither are those of Daniel Tobias and A-1 Mechanical, which are corollaries of those issues, as the propriety of the injunction cannot be determined without first deciding that James Tobias breached his contract. The two are inextricably linked. Daniel Tobias's and A-1 Mechanical's appeal will be dismissed for lack of a final appealable order.

IV.    **Airton's breach of contract appeal**

{¶ 38} Airtron has appealed the trial court's judgment awarding $173,118 to James Tobias for breach of the 2019 Airtron Divisional Vice President Bonus Plan. The company raises two assignments of error, which are essentially alternative ways to rule in its favor. The first assignment of error is that Airtron is not a party to the contract, instead arguing that the contract is really between James Tobias and Direct Energy (Airtron's parent company). The second assignment of error argues that the Bonus Plan did not create a contractual right to payment, stressing the importance of strict interpretation of contract construction.

{¶ 39} Airtron's most persuasive argument is the second: that a plain reading of the terms of the Bonus Plan leads to the conclusion that the bonus was discretionary, and James Tobias was not eligible to receive payment after he left the company.

{¶ 40} James Tobias, on the other hand, argues that the Airtron Divisional Vice President Bonus Plan was more akin to a contractual commitment for earned money that

was paid out in March or April every year. To reach that conclusion, though, he relies on extrinsic evidence, something that cannot be done in the current case.

{¶ 41} The construction and interpretation of a written contract is "a matter of law that we review de novo. * * * Our primary role is to ascertain and give effect to the intent of the parties. * * * We presume that the intent of the parties to a contract is within the language used in the written instrument". *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶ 36, quoting *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452.

{¶ 42} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994), citing *Davis v. Loopco Industries., Inc.*, 66 Ohio St.3d 64, 66, 609 N.E.2d 177 (1993). In those situations, the reviewing court will give effect to the contract as written. The court will "determine the contract's meaning from the language alone, without reference to extrinsic facts or aids." 11 Williston on Contracts § 30:6 (4th ed.). *See also World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶ 28 (when contract terms are clear and unambiguous on their face, the court does not need to look beyond the plain language to determine the obligations and rights of the parties). "[A] court may not go beyond the plain language of the agreement to determine the parties' rights and obligations[.]" *PNC Bank, N.A. v. Springboro Med. Arts. Inc.,* 2d Dist. Montgomery No. 26408, 2015-Ohio-3386, ¶ 16.

{¶ 43} In this case, the plain language of the 2019 Airtron Divisional Vice President Bonus Plan states that the bonus is discretionary and that James Tobias disqualified

himself from payment by leaving the company. We will highlight the contract sections that elucidate the conclusion.

**{¶ 44}** The "Eligibility" clause is the first section that points to Tobias's being ineligible to be paid the bonus. The contract states, "To be eligible for a payment under the Plan, the Participant must be actively employed by the Company in a position eligible under this Plan at the time payments are made. *This is an express condition of eligibility.*" (Emphasis added.) Bonus Plan at 3. It is uncontested that when the 2019 bonuses were paid in October 2020, James Tobias was not employed by Airtron, having left the company some four months earlier.

**{¶ 45}** James Tobias, leaving Airtron in June 2020, would also be disqualified under the "Termination or Transfer" clause. This section states: "If a Participant transfers, resigns, or his/her employment is terminated with or without cause prior to distribution of a bonus payment, the Participant forfeits any bonus payments earned as of the time of the termination. * * * Eligible participants under the plan *must be actively employed at the time payments are made*[.]" (Emphasis added.) Bonus Plan at 4. According to the plain language of the contract, James Tobias was ineligible because he was no longer an Airtron employee when the payments were made.

**{¶ 46}** The contract also stated that receiving a bonus was at the discretion of the company, and the plan could be altered or ended at any time. The "General Information" clause establishes that "[t]he Plan, and any payment arising from it, is at the discretion of Direct Energy ("DE")." Bonus Plan at 3. The "General Information" clause also expressed that the bonus plan could be changed or eliminated, unilaterally, without notice and that "[c]ompensation under this Plan is not contractually guaranteed and remains at all times

discretionary with the Company." Bonus Plan at 3.

{¶ 47} The trial court found, and James Tobias now argues, that the Airtron Divisional Vice President Bonus Plan was not discretionary, but was an earned part of an Airtron vice president's compensation package. He contends that the bonus should have been considered payment owed for work performed in 2019, and that it was previously paid out in March 2014, 2015, 2016, 2017 and 2018, so the bonus was earned as of March 2020. The problem with that conclusion is that to reach it, you must use evidence outside the contract (in this case, in the form of testimony from other executives and exhibits), something that is not permitted when the terms are unambiguous. *See Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 (when a written contract is clear, a court cannot look outside the writing to find the intent of the parties); *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 274 N.E.2d (1978) ("When the terms in a contract are unambiguous, courts cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

{¶ 48} James Tobias, in his brief, states that the present case "reflects the nexus between a court's responsibility as a court expounding the law and the court's responsibility as a court applying equitable concepts." Tobias brief at 19-20. While there could conceivably be scenarios in which an appellate court would wade into equitable waters, it is not the responsibility of this court to "rewrite the parties' contract in order to provide for a more equitable result." *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.,* 145 Ohio St.3d 29, 2015-Ohio-3716, 46 N.E.3d 665, ¶ 36-37. It is the duty of the parties to reflect the equities that they want. Ensuring contractual fairness between

sophisticated parties must be done during the drafting process. Once the document is completed, we are bound to interpret the terms and conditions that are memorialized.

{¶ 49} The terms of the 2019 Airtron Divisional Vice President Bonus Plan indicate that the bonus was discretionary and that to be eligible for it, James Tobias, or any other vice president, must have been employed by Airtron at the time the sum was *paid out*. Because the terms of the contract were unambiguous, it was error for the trial court to look outside the four corners of the contract. Airtron's assignment of error is sustained.

V.     **Conclusion**

{¶ 50} The trial court's judgment in favor of Airtron, ruling that James Tobias breached his non-disclosure, non-competition, non-solicitation agreement, was not a final appealable order because damages must still be decided. Similarly, the trial court's order regarding James Tobias's right to a jury trial was not final or appealable and remains interlocutory. James Tobias's appeal will be dismissed for lack of a final appealable order.

{¶ 51} Because Daniel Tobias's and A-1 Mechanical's appeal is also based on the trial court's ruling on Airtron's claim for breach of contract against James Tobias, their appeal will also be dismissed for lack of a final appealable order.

{¶ 52} The trial court erred by finding that Airtron owed James Tobias a bonus of $173,118. The unambiguous terms of the contract demonstrate that the bonus was discretionary and that because he was not employed by Airtron at the time the bonus was eventually paid out, he was ineligible. The trial court's judgment in favor of James Tobias on his breach of contract claim will be reversed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Stephen A. Weigand
D. Jeffrey Ireland
David C. Greer
James H. Greer
Kevin C. Quinlan
Thomas M. Green
Hon. Mary Katherine Huffman