[Cite as *McGinnis v. Conley*, 2024-Ohio-482.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| KIMBERLY McGINNIS, et al. | : | |
| | : | |
| Appellees | : | C.A. No. 29871 |
| | : | |
| v. | : | Trial Court Case No. 2021 CV 03615 |
| | : | |
| DANNIE D. CONLEY, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 9, 2024

. . . . . . . . . . .

H. STEVEN HOBBS, Attorney for Appellants

ANDREW H. JOHNSTON, Attorney for Appellees

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendants-appellants Dannie and Tammie Conley appeal from the trial court's entry of judgment against them on (1) a breach-of-contract and declaratory-judgment action filed by plaintiffs-appellees Jake, Kimberly, and Carla McGinnis and (2) the defendants' own breach-of-contract counterclaim against the plaintiffs.

{¶ 2} The trial court found that the plaintiffs had exercised an option to purchase real estate under a lease with option to purchase and that the defendants had breached the agreement by refusing to sell the property at the contract price. The trial court also found that the plaintiffs had not breached their lease by making late rent payments or by making modifications to the property.

{¶ 3} The defendants contend the trial court erred in finding a timely exercise of the purchase option. They also claim the plaintiffs defaulted under the agreement by failing to make timely rent payments, thereby terminating the purchase option. Finally, the defendants argue that the option-to-purchase agreement was unenforceable because it was not properly acknowledged and lacked consideration.

{¶ 4} For the reasons set forth below, we conclude that the trial court did not err in finding the defendants in breach of the option-to-purchase agreement and entering judgment against them. The trial court also did not err in finding no breach of the lease by the plaintiffs based on the late rent payments.

## I. Background

{¶ 5} The plaintiffs entered into a two-year lease with option to purchase a home owned by defendant Dannie Conley. The agreement was created by the defendants with input from the plaintiffs. The lease period ran from December 1, 2019, through December 31, 2021. The purchase option provided that "[t]he Option to Purchase period commences on December 1, 2019 and expires on December 1, 2021 11:59 PM with the option to purchase at any time within." The agreement included the following "notice" provision: "To exercise the Option to Purchase, the Lessee must deliver to the Landlord written notice

of Lessee's intent to purchase. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration date of the Lease Agreement. **If notice of intent to purchase is not provided by <u>June 1, 2021</u>, Landlord has the right to list the house for sale and make showings available to prospective buyers**." (Emphasis sic.) Finally, the agreement reiterated that "[n]otice to purchase needs to be initiated by June 1, 2021. Timing is of the essence in this Option to Purchase Agreement."

**{¶ 6}** The record contains text messages between plaintiff Kimberly McGinnis and defendant Tammy Conley, most notably in February and March 2021, regarding the plaintiffs' desire to purchase the property. The messages included references to the plaintiffs' exploring financing options as well as discussions about potentially extending the term of the agreement. The plaintiffs never sent the defendants a letter or text message before June 1, 2021 clearly and explicitly stating that they intended to exercise the purchase option and specifying a closing date.

**{¶ 7}** On July 15, 2021, plaintiff Kimberly McGinnis did send defendant Tammy Conley a message about the plaintiffs "getting their ducks in a row" to try to close on the property in December 2021. In relevant part, the message stated: "The kids are getting all their ducks in a row to hopefully get everything done so they can close by the end of December as per our contract so I just wanted to make sure we're getting things taken care of that may be checked when they do the inspection." Defendant Dannie Conley responded by sending the plaintiffs a letter advising them that their option to purchase had expired on June 1, 2021. The letter gave the plaintiffs seven days to sign a new

contract to purchase the property at a significantly higher price.

{¶ 8} After receiving the letter, plaintiff Kimberly McGinnis sent defendant Tammy Conley additional text messages about purchasing the property. A July 20, 2021 message advised Conley that "the kids have already moved forward with mortgage brokers." Another message sent that day asked Conley whether the defendants would be "willing to proceed as long as they close by December 31st." The defendants refused to sell the property for the price set forth in the option-to-purchase agreement, and the plaintiffs filed the present lawsuit seeking specific performance of the agreement.

{¶ 9} Following a bench trial, the trial court filed a July 12, 2023 decision and judgment entry in which it found that the plaintiffs had exercised the purchase option. The trial court reasoned that the parties' text exchanges collectively constituted written notice of the plaintiffs' exercise of the option. Although the messages from plaintiff Kimberly McGinnis failed to specify a closing date, the trial court held that the text exchanges constituted a mutual modification or waiver of the requirement to specify a date and to close in December 2021. Therefore, the trial court found that the defendants had breached the option-to-purchase agreement by refusing to sell the property to the plaintiffs at the price contained in the agreement. The trial court also held that the plaintiffs did not breach the lease agreement by paying their rent late or by making modifications to the property. As a result, the trial court entered judgment for the plaintiffs on their claims for breach of contract and declaratory judgment. It ordered specific performance of the option-to-purchase agreement and ordered the defendants to sell the property to the plaintiffs at the price set forth in the agreement. The trial court also ruled in favor of the

plaintiffs on a breach-of-contract counterclaim filed by the defendants. The defendants timely appealed, advancing three assignments of error.

## II. Option to Purchase

{¶ 10} The defendants' first assignment of error states:

**THE TRIAL COURT ERRED IN FINDING THE PLAINTIFFS DID TIMELY EXERCISE THEIR OPTION TO PURCHASE THE PROPERTY.**

{¶ 11} The defendants challenge the trial court's determination that the text messages constituted timely written notice of the plaintiffs' exercise of the purchase option and that the defendants breached the agreement by refusing to sell at the agreed price. The defendants contend the messages established at most an "implied exercise," which did not satisfy the written-notice requirement. The defendants also claim there was no modification of the terms of the option-to-purchase agreement. Based on the premise that the plaintiffs failed to meet a contractual June 1, 2021 deadline to give written notice of their exercise of the option, the defendants argue the option expired and, therefore, they did not breach the agreement by refusing to sell for the agreed price.

{¶ 12} This court's interpretation of an unambiguous contract involves a question of law, and de novo review applies. *Airtron, Inc. v. Tobias*, 2021-Ohio-2213, 175 N.E.3d 51, ¶ 42 (2d Dist.). Our purpose when examining a contract is to give effect to the parties' intent, which is presumed to reside in the terms of their agreement. When a contract is unambiguous, we give effect to the terms as written to determine the parties' rights and obligations. We derive the contract's meaning from its language alone, without regard to extrinsic evidence. *Id.* at ¶ 41-42.

{¶ 13} A contract is ambiguous where its meaning cannot be ascertained from its terms or where it is susceptible to multiple reasonable interpretations. *PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2015-Ohio-3386, 41 N.E.3d 145, ¶ 30 (2d Dist.). If ambiguity exists, we may consider extrinsic evidence such as the circumstances when the contract was made, the objectives the parties intended to accomplish, and any acts by the parties demonstrating their interpretation of the agreement. *Id.* But we may not use extrinsic evidence to create ambiguity where none exists. *Id.*

{¶ 14} With the foregoing standards in mind, we see no error in the trial court's holding that the defendants breached the option-to-purchase agreement by refusing to sell to the plaintiffs at the agreed price. We reach that conclusion, however, based on reasoning that differs from the trial court's analysis. *Compare State v. Gwynne*, Ohio Slip Opinion No. 2023-Ohio-3851, __ N.E.3d __, ¶ 33 (Fischer, J., concurring in judgment) (recognizing that appellate courts are "certainly not limited to the analyses presented by the parties or the analysis of the lower court" when "resolv[ing] legal issues."); *see also Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 841 (Ind. App. 2017) ("[G]eneral rules of contract interpretation require us to consider the contract as whole. We are not limited in that interpretation to the precise arguments made by the parties before the trial court and need not turn a blind eye to contractual provisions that may be relevant to our analysis.").

{¶ 15} The parties' contract allowed the plaintiffs to exercise their option "at any time" between December 1, 2019 and December 1, 2021. The way to exercise the option was to give the defendants written notice of the plaintiffs' intent to purchase. Indeed, the

contract explicitly stated that "*[t]o exercise the Option to Purchase*, the Lessee must deliver to the Landlord written notice of Lessee's intent to purchase." (Emphasis added.) It follows that the plaintiffs were entitled to give written notice, and thereby exercise their option, as late as December 1, 2021.

{¶ 16} Although the agreement also stated that notice needed to be "initiated" by June 1, 2021, a failure to meet that deadline did not nullify the option, which, again, could be exercised "at any time" up to December 1, 2021. Rather, the contract identified specific consequences for failing to give notice by June 1, 2021. It provided that **"[i]f notice of intent to purchase is not provided by <u>June 1, 2021</u>, Landlord has the right to list the house for sale and make showings available to prospective buyers."** (Emphasis sic.) In other words, if the plaintiffs failed to give written notice of exercising the option by June 1, 2021, the defendants were entitled to begin making alternative plans by listing and showing the house to obtain back-up offers. If the parties had intended for missing the June 1, 2021 deadline to result in termination of the purchase option, their agreement easily could have said so. But it did not. We note too that reading the language giving the defendants a right to list and show the house as terminating the purchase option would conflict with the plain language allowing the plaintiffs to exercise their option, by giving written notice, "at any time" up to December 1, 2021.

{¶ 17} In short, the option-to-purchase agreement unambiguously gave the plaintiffs a right to exercise their option as late as December 1, 2021. Even assuming arguendo that they failed to give written notice by June 1, 2021, that failure did not result in termination or expiration of the option. It entitled the defendants to initiate contingency

plans by listing and showing the house to other prospective buyers. That being so, the defendants breached the option-to-purchase contract when defendant Dannie Conley sent the plaintiffs a July 2021 letter advising that the purchase option had expired and when the defendants subsequently refused to sell the property at the agreed price. Therefore, the trial court did not err in entering judgment against the defendants for breach of contract. The first assignment of error is overruled.

### III. Late Rent Payments

{¶ 18} The defendants' second assignment of error states:

**THE TRIAL COURT ERRED IN FINDING THE APPELLEES DID NOT BREACH THE AGREEMENT BY MAKING LATE PAYMENTS.**

{¶ 19} The defendants contend that the plaintiffs defaulted on the rent-payment provisions of the lease by making untimely payments, thereby entitling the defendants to terminate the option-to-purchase agreement.

{¶ 20} Under the terms of the parties' lease, the plaintiffs' rent was due on the third day of each month. The lease provided what was in effect a five-day grace period, after which a $5.00 per day late fee applied and the defendants had the option to void the agreement. A default by the plaintiffs under the lease also allowed the defendants to terminate the option-to-purchase agreement by giving the plaintiffs written notice of their intent to do so.

{¶ 21} Trial testimony and exhibits established that the plaintiffs sometimes paid their rent between the fourth and eighth day of the month, within the five-day grace period. In July and November 2020, the plaintiffs paid after the eighth day of the month. The

defendants accepted all payments and never charged a late fee. The defendants never exercised their option to void the lease, and they did not purport to terminate the option-to-purchase agreement on the basis of late rent payments.

{¶ 22} In our view, the trial court correctly found that payments were not actionably late until after expiration of the five-day grace period. Although the plaintiffs often paid after the third day of the month, the lease allowed them to make these late payments. As for the two payments made beyond the grace period in 2020, the defendants did not declare the lease void. Rather, they accepted those payments and continued accepting payments throughout the following year. Nor did defendant Dannie Conley declare the option-to-purchase agreement terminated based on the late payment of rent. His letter advised that the purchase option had expired due to the plaintiffs' failure to provide written notice of their exercise of the option by June 1, 2021.

{¶ 23} Finally, the defendants suggest in passing that late rent payments were not entitled to be credited toward the purchase price under the parties' agreement. As noted above, the two payments made beyond the grace period were made in July and November 2020. When calculating the credit to which the plaintiffs were entitled, the trial court only reduced the purchase price by a percentage of the payments made between December 1, 2020 and December 1, 2021. The trial court did not award the plaintiffs any credit for the July and November 2020 payments. For the foregoing reasons, we overrule the second assignment of error.

### IV. Execution and Enforceability of Option-to-Purchase Agreement

{¶ 24} The defendants' third assignment of error states:

**THE TRIAL COURT ERRED IN FINDING THE OPTION AGREEMENT WAS PROPERLY EXECUTED AND ENFORCEABLE.**

{¶ 25} The defendants contend the option-to-purchase agreement is void because it lacked consideration and Dannie Conley's signature was not acknowledged before a judge, clerk of court, county engineer, mayor, or notary public.

{¶ 26} Upon review, we find this assignment of error to be unpersuasive. Lack of consideration is an affirmative defense. The defendants waived it by failing to raise it at trial. *Vogel v. Tyson*, 2d Dist. Montgomery No. 17930, 2000 WL 896410, *2 (July 7, 2000). And, contrary to counsel's position at oral argument, asserting the issue for the first time in a post-trial memorandum does not constitute raising the issue in the trial court. The defendants' acknowledgement argument, which also was not raised below, implicates R.C. 5301.01. The statute applies to certain documents involving interests in real property and requires the granting party's signature to be acknowledged before one of the individuals identified above. As between the parties, however, a defective or missing acknowledgement does not affect the validity of a transaction in the absence of fraud. *U.S. Bank N.A. v. Stocks*, 2017-Ohio-8108, 98 N.E.3d 1217, ¶ 57 (2d Dist.). The acknowledgment statute is not an escape hatch enabling a party to renege on an agreement. *Id.*, citing *CitiMortgage, Inc. v. Kermeen*, 2d Dist. Darke No. 2011-CA-2, 2012-Ohio-1655, ¶ 48. The third assignment of error is overruled.

### V. Conclusion

{¶ 27} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.